OPINION.
{¶ 1} In this case, Dorothy Smith, personal representative of the estate of Peggy Michelle Moreland, appeals from a summary judgment granted to Nationwide Property and Casualty Insurance Company (Nationwide). In ruling in Nationwide's favor, the trial court found that Nationwide did not have to offer underinsured motorists (UIM) coverage because its policy did not list specific autos as required by R.C.3937.18(L). Smith challenges this decision through the following assignments of error:
 {¶ 2} "I. The deceased, Peggy Moreland, was an insured under the Nationwide Policy issued to her employer, Zales, at the time of her death.
 {¶ 3} "II. The Nationwide policy issued to Zales is an "operator's policy of insurance" and, therefore, Nationwide was required to offer UM/UIM coverage to Zales upon issuance of the policy. Because said coverage was not offered, it must arise by operation of law.
 {¶ 4} "III. If the Nationwide policy is deemed to be an "owner's policy" rather than an "operator's policy," all requirements of R.C. 3937.18
are met and, as such, Nationwide was required to offer UM/UIM coverage with the issuance of the policy. Because such coverage was not offered, it must arise by operation of law.
 {¶ 5} Because our review of the policy provisions and pertinent law indicates that all three assignments of error are without merit, the trial court decision will be affirmed.
 I {¶ 6} The action against Nationwide stems from an auto accident of June 1, 2001, in which Moreland sustained fatal injuries. At the time of the accident, Moreland was employed by a Dairy Queen owned and operated by Zales IDQ, Inc. (Zales). Zales, in turn, was insured by Nationwide under a commercial policy. There is no dispute about the fact that Moreland was not acting in the scope and course of her employment when the accident occurred. She was also not operating or occupying a motor vehicle owned by Zales. Despite these facts, Smith contends that Moreland is entitled to UIM coverage under Scott-Pontzer v. Liberty Mut. FireIns. Co., 85 Ohio St.3d 660, 1999-Ohio-292, because of ambiguity in how the Nationwide policy defines an insured.
 {¶ 7} In response, Nationwide points out that the trial court did not address the issue of whether Moreland was an insured underScott-Pontzer. According to Nationwide, the trial court found that the policy was not an automobile liability policy as defined by R.C. 3937.18(L). As a result, the court had no need to consider the applicability ofScott-Pontzer or whether UIM coverage would arise by operation of law.
 {¶ 8} Due to the way the issues were resolved in the trial court, we will first discuss the third assignment of error, which alleges that UIM coverage arose by operation of law. We will then consider matters pertaining to Moreland's status as an insured, and whether the policy was an "operator's policy" of insurance.
 {¶ 9} The policy Nationwide issued to Zales is a businessowners (or commercial general liability) policy, with policy limits of $2,000,000 for any one occurrence. The named insured on the policy was Zales IDQ Inc., and no individuals or autos were listed. The policy did not provide UIM coverage, but did contain a Businessowners Liability Coverage Form, in which Nationwide promised to pay "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury,' `property damage,' `personal injury' or `advertising injury' to which this insurance applies."
 {¶ 10} An endorsement modified the policy and also provided coverage for hired auto liability and non-owned auto liability. However, Zales purchased coverage only for non-owned autos, which the policy defined as "any `auto' you do not own, lease, hire or borrow which is used in connection with your business." The policy further provided that "you" and "your" are defined as "the Named Insured shown in the Declarations."
 {¶ 11} Although R.C. 3937.18 has now been amended to eliminate the mandatory offering of UIM coverage, the parties agree that at all times pertinent to this case, R.C. 3937.18(A) required all automobile liability or motor vehicle liability policies to offer UIM coverage. If the insurer failed to offer this coverage when required, an insured then acquired it by "operation of law." Wolfe v. Wolfe, 88 Ohio St.3d 246, 251,2000-Ohio-322, and Gyori v. Johnston Coca-Cola Bottling Group, Inc.,76 Ohio St.3d 565, 567, 1996-Ohio-358.
 {¶ 12} In Scott-Pontzer, the Ohio Supreme Court considered whether an off-duty employee was an insured under his employer's corporate policy, and whether he would, therefore, be entitled to UIM coverage by operation of law. 85 Ohio St.3d at 662. The corporation was the named insured on the policy, and the employee was admittedly not acting within the scope of his employment at the time of the accident. Id. at 660-61. The employee also was not driving an auto that the corporation owned; to the contrary, he was operating a vehicle owned by his wife. Id. at 660.
 {¶ 13} Despite these facts, the Ohio Supreme Court held that the employee was entitled to UIM coverage. Id. at 664. In particular, the court noted that the policy definitions were ambiguous, and that "you" as defined in the policy included not just the corporation, but also its employees. Id. The court's point in this context was that a corporation can only act through "real live persons," and cannot itself "occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. For these reasons, the court felt the policy would be rendered meaningless if coverage were limited solely to the corporate named insured. Id.
 {¶ 14} In subsequent cases, we applied Scott-Pontzer as directed by the Ohio Supreme Court. However, in 2001, we noted that a later amendment to R.C. 3937.18 had significantly narrowed the scope of policies that had to include UIM and uninsured motorists (UM) coverage. See Jump v. Nationwide, Montgomery App. No. 18880, 2001-Ohio-1699, 2001 WL 1345954, *2 (discussing R.C. 3937.18(L), which was added to the statute in 1997).
 {¶ 15} The policy in Jump provided coverage for both "hired" and "non-owned" automobiles. Id. at *3. Nonetheless, we found that the policy was not a motor vehicle liability policy under amended R.C. 3937.18, and that the insurer did not have to provide UIM coverage. Id. Specifically, at the time the policy would have been issued, R.C. 3937.18(L) defined "automobile liability or motor vehicle policy of insurance" as either:
 {¶ 16} "(1) [a]ny policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance.
 {¶ 17} "(2) [a]ny umbrella liability policy of insurance." H.B. No. 261, 1997 Ohio Laws File 28.
 {¶ 18} The employee's argument in Jump was that the policy was, in fact, an automobile liability policy under the statute, because "hired" and "non-owned" automobiles are no different from automobiles that are "specifically identified" on a policy. 2001 WL 1345954, *3. We disagreed, stating that "the general categories of hired and non-owned vehicles do not qualify as `specifically identified' vehicles using the plain and ordinary meaning of those terms." Id. Accordingly, we found that including such general coverage did not satisfy the definition of an automobile liability or motor vehicle liability policy in R.C. 3937.18(L). Id.
 {¶ 19} In Jump, the employee also claimed that coverage should exist based on the Ohio Supreme Court decision in Selander v. Erie Ins.Group., 85 Ohio St.3d 541, 1999-Ohio-287. As in Jump, the insurer inSelander had issued a general liability policy providing coverage for "hired" or "non-owned" automobiles. However, the policy did not list any specific vehicles. 85 Ohio St.3d at 543. Ultimately, the Ohio Supreme Court held that UM and UIM coverage will arise under R.C. 3937.18, "even though a liability policy refers only to `hired' or `non-owned' automobiles and fails to identify specific vehicles."85 Ohio St.3d at 544. This decision was based on the fact that "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured and underinsured coverage must be provided." Id.
 {¶ 20} The Ohio Supreme Court was also not troubled by the policy's failure to comply with financial responsibility laws. Instead, the court stressed that "`the type of policy is determined by the type of coverage provided, not by the label affixed by the insurer.'" Id. at 546 (citation omitted).
 {¶ 21} Although Selander would normally have dictated the outcome in Jump, we distinguished Selander because it was decided before R.C.3937.18(L) was enacted. See Jump, 2001 WL 1345954, *3. We continue to take that view.
 {¶ 22} In the present case, the trial court relied on Jump to find that Nationwide had no obligation to offer UIM coverage and that Moreland was not entitled to UIM coverage under the policy. Moreland's representative (Smith) argues that Jump is distinguishable because it involved injury to a pedestrian, not to a driver. She also cites some decisions that disagree with Jump.
 {¶ 23} As a preliminary point, we note that the injured party's status as a pedestrian did not affect the outcome in Jump. To the contrary, we were concerned with the policy's status as an automobile liability policy. An affirmative finding on that point would have caused UIM coverage to arise by "operation of law." Furthermore, the fact that an individual is injured as a pedestrian does not preclude recovery, since the relevant issues are whether a motorist who injured the individual is either uninsured or underinsured for the damages caused by the accident, and whether the party injured is an "insured" under a policy providing protection against such a loss. Regarding the latter point, many policies specifically state that an individual is considered an insured either as a passenger or driver, or as a pedestrian who is struck by an auto. See, e.g., Gill v. Ley, Seneca App. No. 13-03-19,2003-Ohio-4472, ¶ 12 (defining an insured as an individual "while occupying or while a pedestrian when being struck by any `auto'"). See, also, Holsinger v. Hartford Ins. Co. of The Midwest, Pike App. No. 02CA702, 2003-Ohio-4446, ¶ 17 (involving a "drive other cars" endorsement, which provides coverage for individuals occupying an auto, or while pedestrians, when being stuck by any auto they do not own). As a result, Jump is not distinguishable because it involved a pedestrian.
 {¶ 24} We have also reviewed the cases cited by Moreland's representative, and see no reason to alter the views we expressed inJump. In the first place, most of the cited cases are common pleas court decisions that may not reflect the current view of the appellate district in which the court is located. For example, in Perkins v. Hill (May 14, 2002), Lucas C.P. CI01-1425, the Lucas County Common Pleas Court found that "hired" and "non-owned" vehicles meet the statutory requirement of being "specifically identified." However, the Sixth District Court of Appeals (which includes Lucas County) recently rejected this theory, and agreed with the reasoning in Jump. See Wikstrom v. Hilton, Lucas App. No. L-02-1256, 2003-Ohio-4725, ¶s 19-21.
 {¶ 25} Likewise, the Eighth District Court of Appeals has found the reasoning in Jump persuasive, contrary to the Cuyahoga County Common Pleas Court decision cited by Moreland's representative, i.e., Suchan v.Nationwide Ins. Enterprise (May 16, 2002), Cuyahoga C.P. No. 402762. SeeBertram v. West American Ins. Co., Cuyahoga App. No. 81313,2002-Ohio-6513. In this regard, the Eighth District Court of Appeals noted in Bertram that a commercial business owners' policy:
 {¶ 26} "did not precisely, particularly and individually identify any automobiles to be provided liability insurance coverage. R.C.3937.18(L)(1) requires specific identification of automobiles to be covered in order that the policy be deemed one of automobile liability insurance. Where, as here, such specific detail is absent from the policy, the policy does not fall within the parameters of R.C.3937.18(L)(1)." 2002-Ohio-6513, at ¶ 33.
 {¶ 27} Moreover, to the extent that any lower court decisions have relied on Davis v. State Farm Fire and Cas. Co., Franklin App. No. 00AP-1458, 2001-Ohio-8884, 2001 WL 1607089, their reliance is misplaced. For example, Mayle v. Gimroth (Feb. 5, 2002), Stark. C.P. No. 2001CV00084, followed Davis, and found UIM coverage for a deceased employee under a commercial automobile liability policy. The Tenth District Court of Appeals has subsequently undermined this approach, by rejecting Davis as dicta.
 {¶ 28} In Davis, a mother sought UIM coverage under her homeowners' policy for the death of her adult son, but the trial court denied coverage. 2001 WL 1607089, *1-2. On appeal, the Tenth District Court of Appeals found that the record lacked sufficient evidence for computing the effective date of the last guaranteed policy period before amendments to R.C. 3937.18. Id. at *7. As a result, the Tenth District remanded the case for resolution of this issue. After deciding to remand, the Tenth District discussed Jump, and concluded, contrary toJump, that the legislature did not intend "to require makes, models, and serial numbers" when it used the term "specified." Id. at *8.
 {¶ 29} This discussion was not needed to resolve the appeal, as the Davis court itself stressed. Id. The Tenth District Court of Appeals then later rejected its observations in Davis as dicta, and elected to follow Jump instead. See Allen v. Transportation Ins. Co., Franklin App. No. 02AP-49, 2002-Ohio-6449, ¶ 36; Barry v. The Cincinnati Ins.Companies, Franklin App. No. 01AP-1437, 2002-Ohio-4898, ¶ 44; andDixon v. Professional Staff Management, Franklin App. No. 01AP-1382,2002-Ohio-4493, ¶ 34.
 {¶ 30} As we said, we see no reason to reconsider Jump. As inJump, the Nationwide policy does not specifically identify any vehicles, is not a motor vehicle liability policy under R.C. 3937.18(L), and UIM coverage does not arise by operation of law. Accordingly, the third assignment of error is without merit and is overruled.
 {¶ 31} As an aside, we note that we have applied R.C. 3937.18 as it existed on the effective Nationwide policy date of May 21, 2001. SeeBenson v. Rosler (1985), 19 Ohio St.3d 41, Ross v. Farmers Ins. Group ofCos., 82 Ohio St.3d 281, 1998-Ohio-381, and Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322. This is the same version of the statute that we applied in Jump. Normally, we calculate the original and renewal dates of an insurance policy to decide what version of R.C. 3937.18
applies, and to decide if any two-year guarantee period prevents the policy from being altered under Wolfe. 88 Ohio St.3d at 250. This calculation was unnecessary in this case, for several reasons.
 {¶ 32} First, the application of Wolfe has been rejected where the particular insurance policy is not an automobile liability policy on its face. See, Dixon, 2002-Ohio-4493, at ¶ 23. Second, even if Wolfe
applied, the relevant amendment to R.C. 3937.18 was effective September 3, 1997, more than three years before the beginning of the policy period in this case. And finally, while this is not dispositive by any means, neither side disputes which version of the statute applies.
 II {¶ 33} In the second assignment of error, Smith contends that the Nationwide policy was an "operator's policy," which would also create UIM coverage by operation of law. According to Smith, operators' policies are intended to protect persons who operate vehicles (in this case, the named insured's employees), rather than just protecting automobiles. As support for this view, Smith points out that where a policy provides coverage for non-owned vehicles only, the nature of the coverage is such that no vehicles can ever be specifically identified.
 {¶ 34} This argument directly contradicts Smith's argument about the policy's coverage for non-owned vehicles, i.e, that coverage for "non-owned" vehicles fulfills the requirement in R.C. 3937.18(L) that vehicles be specifically identified in the policy. Putting that point aside, however, we note that R.C. 3937.18(L) does not refer to an "operator's policy," nor does it connect UIM coverage to the status of being an "operator" or an "owner." Instead, R.C. 3937.18(L)(1) refers to "owners or operators of the motor vehicles specifically identified in the policy of insurance." Thus, the relevant connection is between the "owner or operator" and the "motor vehicles specifically identified in the policy." Again, because no such vehicles were identified in the Nationwide policy, UIM coverage would not arise.
 {¶ 35} As we mentioned earlier, R.C. 3937.18(L) defines an "automobile liability or motor vehicle policy of insurance" as "[a]ny policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance." In arguing that UIM coverage should arise, Smith focuses on R.C. 4509.01(L), which allegedly defines a "motor vehicle policy" as "an owner's policy or an operator's policy of liability insurance." However, R.C. 4509.01(L) actually states that:
 {¶ 36} "`[m]otor-vehicle liability policy' means an `owner's policy' or an `operator's policy' of liability insurance, certified asprovided in section 4509.46 or 4509.47 of the Revised Code as proof of financial responsibility, and issued, except as provided in section 4509.47
of the Revised Code, by an insurance carrier authorized to do business in this state, to or for the benefit of the person named therein as insured" (emphasis added).
 {¶ 37} Because the Nationwide policy insuring Zales was not "certified as provided in R.C. 4509.46 or 4509.47," R.C. 4509.01(L) does not apply and does not make the commercial liability policy an "automobile liability or motor vehicle policy" for purposes of UIM coverage. We have previously noted that in Ohio, the need for "certification" arises only in certain limited circumstances, like reinstatement after suspension. Lane v. State Auto Ins., Miami App. No. 2002-CA-10, 2002-Ohio-5128, ¶ 41. The present case does not involve such a situation. See, also, Cincinnati Ins. Co. v. Kramer (1993),91 Ohio App.3d 528, 532 (holding that requirements for "operator's policy" refer only to policy that has been "certified" under R.C. 4509.45
and R.C. 4905.46).
 {¶ 38} As an additional matter, R.C. 3937.18(L) does not incorporate or even refer to the definition of "motor vehicle liability policy" that is contained in R.C. 4509.01(L). Instead, R.C. 3937.18(L) refers only to "proof of financial responsibility as it is defined in division (K) of R.C. 4509.01." The language of R.C. 4509.01(K) has remained constant at all pertinent times, and defines proof of responsibility as: "proof of ability to respond in damages for liability [in statutorily mandated amounts], on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle * * *." (parenthetical material supplied).
 {¶ 39} Motor vehicle liability policies are not the only method of proving ability to respond in damages for liability. See R.C. 4509.45
(noting that acceptable forms of proof include, but are not limited to financial responsibility identification cards, bonds, and certificates of deposit of money or securities). If the legislature intended for the definition of "motor vehicle liability policy" in R.C. 4509.01(L) to be interchangeable with the definition of "automobile liability or motor vehicle policy" in R.C. 3937.18(L), it could have said so directly. Since the legislature specifically included only R.C. 4509.01(K) as a reference point, we have no basis for applying a different section of the statute.
 {¶ 40} Based on the preceding discussion, the second assignment of error is without merit and is overruled.
 III {¶ 41} In the first assignment of error, Smith contends that Moreland, as a Zales employee, was an "insured" under the Nationwide policy, even though she was not driving her automobile in the course of her employment at the time of the accident. Nationwide's response is two-fold. First, Nationwide points to policy language limiting coverage to employees acting within the scope of their employment. Nationwide also argues that the issue of whether Moreland is an insured is irrelevant, because the trial court found that the policy is not an automobile liability policy susceptible to the offer requirements of R.C. 3937.18(A).
 {¶ 42} We agree with Nationwide. The trial court did not discuss whether Moreland was an "insured" under the policy, but simply found that UIM coverage was not required. We agree that the issue is irrelevant, because the policy was not an automobile liability or motor vehicle policy, and UIM coverage did not exist by operation of law. Therefore, even if Moreland were an "insured" under Scott-Pontzer's expanded interpretation of the word "you," the policy would still not provide either Moreland or her estate with UIM coverage. In view of these facts, we need not discuss the specific provisions of the policy. Accordingly, the third assignment of error is without merit and is overruled.
 {¶ 43} Based on the preceding discussion, all three assignments of error are overruled and the judgment of the trial court is affirmed.
FAIN, P.J., and WOLFF, J., concur.
(Honorable George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).