**HOLLON, Appellant,**

v.

**CLARY et al., Appellees.**

[Cite as *Hollon v. Clary,* 155 Ohio App.3d 195, 2003-Ohio-5734.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19826.

Decided Oct. 24, 2003.

Ronald J. Maurer, for appellant.

Stephen V. Freeze, for appellees.

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant, William M. Hollon, appeals from a summary judgment rendered against him in favor of his employer's automobile insurance carrier, Twin City Mutual Fire Insurance Company, finding that no uninsured and underinsured motorists ("UM/UIM") coverage exists by operation of law, because there was a valid written offer and rejection of UM/UIM coverage. Hollon contends that the trial court erred in rendering summary judgment in favor of Twin City, since the written offer and rejection of UM/UIM coverage is not valid, because it fails to meet the requirements of *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338. Hollon contends that the written offer and rejection of UM/UIM coverage is not valid, because it fails to set forth the premium for coverage, as required by *Linko*.

{¶ 2} We conclude that the requirements of *Linko* apply to this case, and that the written offer and rejection of UM/UIM coverage in this case is not valid, because it fails to set forth the premium for coverage, as required by *Linko*. Because the written offer and rejection of UM/UIM coverage is not valid, UM/UIM coverage arises by operation of law in amounts equal to the liability limits of the Twin City policy. We overrule our decision in *Manalo v. Lumberman's Mut. Cas. Co.*, Montgomery App. No. 19391, 2003-Ohio-613, 2003 WL 264344, to the extent that it is inconsistent with our holding in the case presently before us.

{¶ 3} We conclude that the trial court erred in rendering summary judgment against Hollon and in favor of Twin City. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 4} On October 15, 1999, William M. Hollon was injured in a car accident while driving the vehicle of his employer, American Ambulette and Ambulance Services, Inc., in the course and scope of his employment.[1] At the time of the accident, American was insured by Twin City Mutual Fire Insurance Company under a policy of insurance that included forms for Business Auto and Commercial General Liability coverages with the effective dates of coverage being December 18, 1998, through December 18, 1999. Hollon brought this action against the tortfeasor, David Robinson, and American's automobile insurance carrier, Twin City, as well as Hollon's personal insurance carrier, GuideOne Insurance Company, seeking UM/UIM coverage.

---

1. Although two separate automobile accidents were involved in this case, only the accident of October 15, 1999, is at issue on this appeal.

{¶ 5} The claims against Robinson were settled, and he was dismissed from this case. GuideOne and Twin City both filed motions for summary judgment in the trial court. The trial court denied GuideOne's motion for summary judgment, finding that UM/UIM coverage existed. However, Hollon later voluntarily dismissed, without prejudice, the claims against GuideOne. The trial court granted Twin City's motion for summary judgment, finding that no UM/UIM coverage arose by operation of law because there was a valid written offer and rejection of UM/UIM coverage. From the summary judgment rendered against him and in favor of Twin City, Hollon appeals.

## II

{¶ 6} Hollon's sole assignment of error is as follows:

{¶ 7} "The trial court erred as a matter of law finding a valid offer and rejection, therefore finding no UM/UIM coverage by operation of law."

{¶ 8} Hollon contends that the trial court erred in rendering summary judgment in favor of Twin City, finding that UM/UIM coverage did not exist by operation of law upon the ground that there was a valid written offer and rejection of UM/UIM coverage. We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 9} Hollon contends that the offer and rejection of UM/UIM coverage must meet the requirements of *Linko,* 90 Ohio St.3d 445, 739 N.E.2d 338, in order to be valid. Hollon further contends that the written offer and rejection of UM/UIM coverage is not valid, because it does not set forth the premium for coverage, as required by *Linko.*

{¶ 10} It is undisputed that the requirements for a valid offer and rejection of UM/UIM coverage provided in *Linko* apply to this case. The Ohio Supreme Court has held that the requirements of *Linko,* relative to an offer of UM/UIM coverage, are applicable to a policy of insurance written after the enactment of HB 261, effective in 1997, and before the enactment of SB 97, effective in 2001. *Kemper v. Michigan Millers Mut. Ins. Co.,* 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, at ¶ 2, 4. In *Linko,* the Ohio Supreme Court held that " '[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider.' " (Citation omitted.) *Linko,* 90 Ohio St.3d at 448–449, 739 N.E.2d 338. "[W]e cannot know whether an

insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer." Id. at 449, 739 N.E.2d 338. "To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" Id. at 447–448, 739 N.E.2d 338.

{¶ 11} Here, there are two offer-and-rejection forms relating to UM/UIM coverage, Twin City's Form CAF–4213–3 and Form CAF–7062–0. On February 19, 1998, Kenneth Miller, owner of American, signed Twin City's Form CAF–4213–3, selecting the option to reject Uninsured Motorists Coverage — Bodily Injury entirely. On the same day, Miller also signed Twin City's Form CAF–7062–0, selecting the option to reject Uninsured Motorists Coverage — Bodily Injury totally.

{¶ 12} Horton does not dispute that the Twin City forms informed American of the availability of UM/UIM coverage, included a brief description of the coverage, and expressly stated the UM/UIM coverage limits in its offer. Horton only disputes that the Twin City forms fail to set forth the premium for UM/UIM coverage, as required by Linko.

{¶ 13} Twin City does not dispute that the two forms fail to set forth the premium for UM/UIM coverage. Twin City argues that the Linko requirements are met when the offer and rejection forms are considered in conjunction with the affidavit of Miller. Miller stated in his affidavit that "[b]efore approving and signing these rejection forms, I was informed, aware and understood: (a) that UM/UIM coverage was available; (b) the amount of the premium that would be charged for UM/UIM coverage if I selected UM/UIM coverage or of the reduced premium if I selected reduced UM/UIM limits; (c) what UM/UIM coverage was; and (d) that I was rejecting UM/UIM coverage in its entirety."

{¶ 14} Twin City bases its argument on Kemper, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, and our decision in Manalo, 2003-Ohio-613. In Kemper, the United States District Court for the Northern District of Ohio certified to the Supreme Court of Ohio the following question: " 'If the Linko requirements are applicable, does, under [1997] HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage.' " Kemper, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, at ¶ 3. The Ohio Supreme Court answered in the negative. Id. at ¶ 4. Twin City argues that, based on the answer to this question, the Ohio Supreme Court allows extrinsic evidence to be considered in determining whether an offer and rejection of UM/UIM coverage is valid.

{¶ 15} Twin City further argues that our decision in Manalo is consistent with Kemper. In Manalo, we stated that "[w]e agree with the trial court that the

form signed by Avon, standing alone, does not meet the *Linko* requirements as it does not include a statement of the premium for the selected coverage. However, in the case before us, that form is not by itself determinative of the issue. Here, there is other evidence of an offer of coverage, in the form of an affidavit * * * by the director of Global Risk Management Insurance with Avon Products, Inc. * * * He * * * stated in his affidavit as follows: 'At all times, I was fully aware of the requirements under the laws of Ohio with regard to UM/UIM coverage. In addition, I was informed of the increase in premiums that would be included in the policy if I were to elect a higher amount of UM/UIM coverage.' " *Manalo,* 2003-Ohio-613, at ¶ 27. "We find that the form signed by the duly authorized representative of Avon * * *, taken together with the comprehensive affidavit of Avon's duly authorized representative, fully satisfy the requirements of *Linko* that Avon made an 'express, knowing rejection of UM/UIM coverage.' " Id. at ¶ 28. "We overrule [the] assignment of error on the ground that the form, together with 'other evidence, oral or documentary, of an offer of coverage' (*Kemper,* supra) satisfies all the *Linko* requirements in this case." Id. at ¶ 29.

{¶ 16} Upon further reflection, we agree with the United States Court of Appeals for the Sixth Circuit when it stated that "[n]othing in the Ohio Supreme Court's answer [in *Kemper* ] suggests that extrinsic evidence can be used to support a signed rejection. The only basis in *Kemper* for inferring that extrinsic evidence could be used comes from the question certified to the Ohio Supreme Court by a federal district court in the Northern District of Ohio. By asking whether a signed rejection alone (without extrinsic evidence, such as oral evidence) constitutes a valid rejection, the question did, to an extent, intimate that extrinsic evidence could be used in the determination of whether a rejection was valid. But the question was not drafted by the Ohio Supreme Court; it was drafted by a federal district court. The Ohio Supreme Court therefore has in no way undercut its rulings that the premium for insurance must be stated in the written offer, see *Linko* [90 Ohio St.3d 445], 739 N.E.2d at 342, and that this requirement still applies after the passage of H.B. 261, see *Kemper* [98 Ohio St.3d 162], 781 N.E.2d at 196. Bound by those statements, we must hold the offer * * *, which did not state the premium, to be fatally defective." *Roberts v. Universal Underwriters Ins. Co.* (C.A. 6, 2003), 334 F.3d 505, 510, at fn. 4; see, also, *McNeeley v. Pacific Employers Ins. Co.,* Franklin App. No. 02AP–1217, 2003-Ohio-2951, 2003 WL 21321469, at ¶ 15 (holding that, pursuant to *Linko,* extrinsic evidence is not admissible to prove a knowing and express waiver of UIM coverage, and that *Kemper* does not alter this holding); *Kalista v. Pacific Employers Ins. Co.,* Cuyahoga App. No. 82286, 2003-Ohio-3031, 2003 WL 21436169, at ¶ 33 (holding that, pursuant to *Linko,* the four corners of the insurance policy control in determining whether an offer of coverage was valid,

and that *Kemper* does not allow for oral or documentary evidence to support an offer of UM/UIM coverage); *Glover v. Lumbermens Mut. Cas. Co.*, Hamilton App. Nos. C–020192 and C–020205, 2003-Ohio-1020, 2003 WL 832493, at ¶ 18 (holding that the requirements of *Linko* must appear within the four corners of the insurance policy); *Jordan v. Travelers Prop. Cas. Ins. Co.*, Stark App. No. 2002CA00248, 2003-Ohio-1309, 2003 WL 1257084, at ¶ 48 (refusing to consider an endorsement to a commercial automobile policy to find that a premium existed in the offer and rejection of UM/UIM coverage).

{¶ 17} Because we agree with the holding in *Roberts v. Universal Underwriters Ins. Co.*, supra, *Manalo v. Lumberman's Mut. Cas. Co.*, supra, is overruled to the extent that it holds that an offer of uninsured/underinsured motorist insurance need not state the premium to be charged for the coverage when there is extrinsic evidence that the insured is already aware of the premium.

{¶ 18} The two Twin City offer-and-rejection forms relating to UM/UIM coverage clearly do not set forth the premium for UM/UIM coverage, as required by *Linko*. Thus, we conclude that the written offer and rejection of UM/UIM coverage is not valid because it fails to meet the requirement of *Linko* that the premium for the coverage be stated in the offer.

{¶ 19} "It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state. R.C. 3937.18(A). Failure to do so results in the insured acquiring UM coverage by operation of law." *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 567, 669 N.E.2d 824. Because the written offer and rejection of UM/UIM coverage is not valid, UM/UIM coverage arises by operation of law in amounts equal to the liability limits of the Twin City policy.

{¶ 20} Construing the evidence most favorably to Twin City, reasonable minds could come to but one conclusion: that the written offer and rejection of UM/UIM coverage is not valid, and that Twin City is required to provide UM/UIM coverage as a matter of law. We conclude that the trial court erred in rendering summary judgment against Hollon and in favor of Twin City.

{¶ 21} Hollon's sole assignment of error is sustained.

### III

{¶ 22} Hollon's sole assignment of error having been sustained, we reverse the judgment of the trial court, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF and POWELL, JJ., concur.

STEPHEN W. POWELL, J., of the Twelfth Appellate District, sitting by assignment.