OPINION
{¶ 1} Rhonda Pitsenbarger, Trina Mapson, Teryl Boney, Kanesha Boney, and Tanika Ray are appealing the judgment of the Miami County Common Pleas Court, which granted summary judgment in favor of the defendants Travelers Indemnity Insurance Company ("Travelers") and United States Fidelity Guaranty Company ("USFG").
 {¶ 2} On January 14, 2001, Eddie Crenshaw was driving his vehicle with his wife, Lisa Jo Crenshaw, and Teryl Boney as passengers.[1] At the same time, Timothy Foos was operating his vehicle in the opposite direction on the same highway. Foos lost control of his vehicle, causing it to go left of center and collide with Crenshaw's vehicle. As a result of the collision, Eddie and Lisa were killed, and Teryl Boney was injured.
 {¶ 3} At the time of the collision, Lisa was employed by Kmart, which had a liability insurance contract with USFG with a limit of coverage of $2,000,000. Eddie was employed by Sally Beauty Company, which had a business automobile policy and two commercial general liability policies with Travelers. Boney also worked for Sally Beauty Company. Rhoda Pitsenbarger, the executor of Lisa's estate, brought a wrongful death suit against Foos, and a claim for underinsured motorist coverage against USFG and Travelers for Lisa's death.[2] The executor of Eddie's estate, Elizabeth Crenshaw, filed a wrongful death action against Foos and a claim for underinsured motorist coverage against Travelers and USFG.[3] Boney, who suffered permanent bodily injuries as a result of the accident filed a personal injury suit against Foos and a claim for underinsured motorist coverage from Travelers. Teryl Boney's family members, Kanesha Boney and Tanika Ray, have likewise filed claims against Foos and Travelers. Because the cases arose out the same accident, the lower court combined the cases. Foos was insured by Safeco, who settled with the Appellants for the limits of Foos' bodily coverage — $300,000.
 {¶ 4} On January 3, 2003, Pitsenbarger filed a motion for partial summary judgment against USFG on the issue of Lisa's estate's claim for UM/UIM coverage with USFG. USFG filed a memorandum in opposition and its own motion for summary judgment. On October 16, 2002, Mapson filed a motion for summary judgment for Eddie's estate's claim pursuant to the insurance policies issued by Travelers to Sally Beauty Company. On January 29, 2003, Mapson also filed a motion for summary judgment on the issue of coverage under the insurance policy issued by USFG. Travelers and USFG opposed Mapson's motion and each filed a motion for summary judgment themselves. Similarly, Boney and her family members filed a motion for summary judgment against Travelers, and Travelers filed a counter motion for summary judgment. On April 28, 2003, the trial court denied Pitsenbarger's, Mapson's, and Boney's motions for summary judgment and sustained USFG's and Travelers' motions for summary judgment. Pitsenbarger, Mapson, Boney, and Boney's family members have filed this appeal from that decision.
 {¶ 5} The Appellant's raise various assignments of error but all essentially argue that the trial court erred in denying their motion for summary judgment and in granting USFG's and Travelers' motions for summary judgment.
 {¶ 6} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v. StateEmp. Relations Bd. (1997), 78 Ohio St.3d 181, 183, 1997-Ohio-221; Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
The claims based on the USFG policy
 {¶ 7} Both Lisa's estate and Eddie's estate have brought UM/UIM claims against USFG arising out of Lisa's employment with Kmart. They argue that the trial court erred in granting USFG's motion for summary judgment. We disagree.
1. Lisa's estate's claims
 {¶ 8} In Scott-Pontzer v. Liberty Mutual Fire Insurance Company,
the Ohio Supreme Court held that a commercial automobile policy issued to an employer provided UM/UIM coverage to the estate of an employee killed in an automobile accident. 85 Ohio St.3d 660, 1999-Ohio-292. The policy in Scott-Pontzer defined those insured under the policy as "you", which the policy defined as the "named insured." Id. Although the policy listed the named insured as the corporation, the Court determined that the policy's definition of the insured was ambiguous and that `you' was open to more than one interpretation. Id. The Court reasoned that a corporation is not a person and is therefore not capable of acting or being injured. Id. Because a corporation can only act through its employees, its employees are deemed insured for the purpose of UM/UIM coverage. Id.
 {¶ 9} When underinsured coverage arises by operation of law, the court must look to the definition of who is an insured in the liability section of the policy to determine who is an insured for coverage imposed by operation of law. Luckenbill v. Midwesterrn Indem. Co. (2001),143 Ohio App.3d 501. Similarly, the Tenth District Court of Appeals has held that when coverage arises by operation of law the liability section of the policy should be relied upon in determining who is an insured.Demetry v. Kim (1991), 72 Ohio App.3d 692.
 {¶ 10} The liability portion of the USFG policy in defining its "insureds" provides
 {¶ 11} "1. Who is an Insured
 {¶ 12} "The following are `insureds':
 {¶ 13} "You for any covered `auto'.
 {¶ 14} "Anyone else while using with your permission a covered `auto' you own, hire or borrow, except: * * *." USFG policy Section II (A)(1).
 {¶ 15} The Broadened Coverage for Named Individuals endorsement changes the policy's liability coverage stating:
 {¶ 16} "The following is added to Who is an Insured:
 {¶ 17} "Any individual named in the Schedule and his or her spouse, while a resident of the same household, are `insureds' while using any covered `auto' described in Paragraph B.1. of this endorsement."
 {¶ 18} Paragraph B.1. of the endorsement provides:
 {¶ 19} "Any `auto' you don't own, hire, or borrow is a covered `auto' for Liability Coverage while being used by any Individual named in the Schedule or by his or her spouse while a resident of the same household except:
 {¶ 20} "a. Any `auto' owned by that individual or by any member of his or her household.
 {¶ 21} "b. Any `auto' used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking `autos'."
 {¶ 22} The Schedule in the endorsement lists the name of the individual as, "All individuals assigned or leasing a company car where no other vehicle is owned by such individuals."
 {¶ 23} Additionally, the USFG policy has an "Employees as Insureds" endorsement that adds to the definition of who is an insured, "Any `employee' of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
 {¶ 24} Pitsenbarger argues that "you" as it is used in the USFG policy is ambiguous, and like Scott-Pontzer should be interpreted to include employees of the company. USFG argues that "you" is not ambiguous in this policy and is consistently applied throughout the policy to represent the Kmart Corporation. USFG distinguishes Scott-Pontzer because in Scott-Pontzer, the underlying policy was an UM/UIM policy, not a liability policy as in this case. InScott-Pontzer, the Court's rationale for determining that "you" was ambiguous was that a corporation cannot take actions and cannot sustain injuries and therefore one could reasonably conclude that "you" included the corporation's employees, who could sustain injuries. However, in a liability policy, a corporation can be held liable for damages. Thus, USFG argues that "you" is not ambiguous in the liability policy, but means the Kmart corporation. Therefore, the "you" in the USFG policy should not be judicially defined to include Kmart's employees. We agree. The USFG policy can be consistently and logically read with "you" meaning the Kmart corporation. We do not think the term "you" in the policy is ambiguous and thus, do not choose to judicially define "you" to include Kmart's employees.
 {¶ 25} However, this is not determinative of the issue of whether Lisa was an insured under the USFG policy issued to Kmart. The "Employees as Insured" endorsement to the policy included as insureds, "Any `employee' of yours * * * while using a covered `auto' you don'town, hire or borrow in your business or your personal affairs." (Emphasis added.) Reading "you" as Kmart, this would read, "Any `employee' of Kmart's is an insured while using a covered `auto' [Kmart doesn't] own, hire or borrow in [its] business or [its] personal affairs." The liability policy's declarations page lists "covered autos" for liability coverage as the symbol "1", which is described on page one of the Business Auto Coverage Form as "any auto." USFG urges that this endorsement unambiguously limits coverage to those employees not in a vehicle either owned, hired or borrowed by Kmart and who are using the auto for Kmart's business or personal affairs. However, we do not agree.
 {¶ 26} A reasonable reading of this endorsement is that any Kmart employee is an insured under the policy so long as he is not in a vehicle that Kmart either owns, hires or borrows, and that vehicle is not used in Kmart's business or personal affairs. We find that this endorsement is ambiguous. The Ohio Supreme Court has stated that "language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Scott-Pontzer, supra at 665, quoting Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34, syllabus. However, the Ohio Supreme Court has further stated that when attempting to determine whether a claimant is an insured under the policy, the ambiguity should be interpreted in favor of the policyholder. Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 35. The Westfield
court continued on to state that "[p]roviding uninsured motorist coverage to employees who are not at work * * * is detrimental to the policyholder's interests." Id. at ¶ 38, citing Cook v. Kozell, (1964)176 Ohio St. 332 (finding that an expansive reading of those insured under the policy is detrimental to the policy holder by resulting in an increase in their premiums).
 {¶ 27} Moreover, if we interpret the employee as insureds endorsement to insure employees who are not acting for Kmart's business or personal affairs, then the USFG liability policy would not cover employees who are driving their own personal vehicles while acting for Kmart's business purposes. This could additionally be detrimental to Kmart, who might have some potential liability for its employees if they are acting for its business purposes. Thus, although the language in the "Employees as Insured" endorsement to the USFG policy can be reasonably read so as to include Lisa as an insured, as this interpretation would be detrimental to Kmart, the policyholder, the endorsement must be interpreted to mean only employees that are in a covered auto for Kmart's business or personal affairs and that vehicle is not owned, hired, or borrowed by Kmart. But see, Moore v. Kemper Ins.Cos., Delaware App. No. 02CAE 04018, 2002-Ohio-5930 (holding that a similar endorsement provided liability coverage to employees of the named insured). Since Lisa was not in a vehicle that was operating for Kmart's business or personal affairs, Lisa was not an insured under the endorsement. Therefore, the trial court did not err in determining that Lisa was not an insured under the policy.
 {¶ 28} USFG additionally argues that even if Lisa is an insured, UM/UIM coverage does not arise by operation of law because Kmart is self-insured in the practical sense. R.C. 3937.18 does not apply to companies that are self-insured, and this has been extended to businesses that are self-insured in the practical sense. Although other jurisdictions may disagree, this Court held in Grubb v. Michigan MutualInsurance Co., Montgomery App. No. 19575, 2003-Ohio-1558 that a business is not self-insured when it obtains an insurance policy wherein the deductible and the limits of the policy are the same. Expounding on this case, in Dirksen v. Philpot, Darke App. No. 1610, 2003-Ohio-4320, we found that a business that purchased an insurance policy for a million dollars but kept a deductible of $250,000 was not self-insured and was not exempt from R.C. 3937.18.
 {¶ 29} Similarly, the USFG policy with Kmart had a deductible of $250,000 and a liability limit of two million dollars. Based on this deductible, USFG argues that Kmart was self-insured in the practical sense and is exempt from R.C. 3937.18. We disagree; this case is similar to Dirksen and we likewise find that Kmart was not a self-insured and is not exempt from R.C. 3937.18.
 {¶ 30} Finally, USFG argues that the trial court properly granted it summary judgment because Kmart knowingly and validly rejected UM/UIM coverage after USFG properly offered such coverage. R.C.3937.18 requires every automobile insurance contract in Ohio to offer UM/UIM coverage in amounts equal to the liability coverage. However, an insured may choose to reject UM/UIM coverage by signing a written rejection form that creates a statutory presumption of a valid offer. An offer of UM/UIM coverage must inform the insured of the availability of UM/UIM coverage, briefly describe this type of coverage, state the premium of this type of coverage, and offer coverage equal to the liability limits in order for it to be a valid rejection. Linko v.Indemnity Ins. Co. of N. Am., 90 Ohio St.3d 445, 449, 2000-Ohio-92;Kemper v. Michigan Millers Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 31} In Manalo v. Lumberman's Mut. Cas. Co., Montgomery App. No. 19391, 2003-Ohio-613, this Court found a valid offer and rejection where the rejection form failed to meet the Linko requirements but the insurance company offered extrinsic evidence in the form of an affidavit that the insured had known of the higher premium for the offered UM/UIM coverage. However, the Manalo opinion was recently overruled in Hollonv. Clary, Montgomery App. No. 19826, 2003-Ohio-5734. In Hollon, we stated that Manalo was "overruled to the extent that it holds that an offer of uninsured/underinsured motorists insurance need not state the premium to be charged for the coverage when there is extrinsic evidence that the insured is already aware of the premium." Id. In Hollon, the rejection forms did not set forth the premium but the insurance company argued that the Linko requirements were met due to the submission of an affidavit of the owner of the insured company in which he stated he was aware of the amount of the premium he would be charged for UM/UIM coverage if it was selected. Id. In Hollon, we said the rejection form combined with the affidavit did not satisfy the Linko requirements and was not a valid offer and rejection. Id.
 {¶ 32} USFG argues that the Supplemental Auto Application Form (hereinafter "rejection form") when combined with extrinsic evidence constituted a valid rejection of UM/UIM coverage by Kmart. USFG concedes that the rejection form failed to provide Kmart with a definition or description of the UM/UIM coverage and did not set forth the premium for the UM/UIM coverage. There is no dispute that the rejection form without any other evidence does not meet the Linko
requirements for a valid offer and rejection of UM/UIM coverage. However, USFG argues that they have submitted the affidavit of Kmart's supervisor of public liability in which he stated that Kmart elected to reject UM/UIM coverage after being apprised of the availability of the coverage, offered UM/UIM coverage in amounts equal to liability coverage, offered a brief description of the coverage, and explained the premiums associated with the coverage. USFG argues that this affidavit when combined with the rejection form amounts to a valid offer and rejection.
 {¶ 33} Yet, based on Hollon, we cannot agree. When a rejection form fails to meet the Linko requirements, we do not believe that an insurance company can prove those requirements by submitting an affidavit of the signer of the rejection form asserting his knowledge of the Linko
requirements. The rejection form did not amount to a valid offer and rejection.
 {¶ 34} However, since Lisa was not an insured under the policy, the trial court did not err in granting summary judgment in favor of USFG. Pitsenbarger's assignment of error is without merit and is overruled.
2. Eddie's estate's claims
 {¶ 35} As for Mapson's claim on behalf of Eddie's estate against USFG, we have determined above that "you" in the USFG policy was not ambiguous and therefore, should not be read to include "employees" and thus, not employees' family members. Eddie's estate argues that Ezawa v. Yasuda Fire Marine Ins. Co. (1999),86 Ohio St.3d 557, stands for the principle that family members are always included as insureds if UM/UIM coverage arises by operation of law pursuant to Scott-Pontzer. In Hamilton v. CNA Ins., Darke App. No. 1591, 2003-Ohio-1761, we stated:
 {¶ 36} "We have previously discussed our interpretation of the Supreme Court's decision in Ezawa: `We do not read Scott-Pontzer andEzawa as including family members in the definition of `you' where the policy itself does not expressly include family members in its definition. Rather, we read Ezawa as applying the definition of an insured, which includes family members, in the context ofScott-Pontzer's definition of `you'. Agudo de Uzhca v. Derham, Montgomery App. No. 19106, 2002-Ohio-1814. The policy at issue in this case does not include family members in its definition of insured, and there is no legal basis for doing so absent a provision in the policy. [Plaintiff's] reading of Ezawa as holding that family members of employees are always insured for the purposes of uninsured motorist coverage is erroneous." Moreover, Ezawa was recently overruled by the Ohio Supreme Court.Westfield, supra.
 {¶ 37} The only provisions in USFG's policy that includes family members that this Court can find are the following clauses in a provision of the Drive Other Car Coverage — Broadened Coverage for Named Individuals Endorsement
 {¶ 38} "b. Changes in liability coverage
 {¶ 39} "1. Any `auto' you do not own, hire or borrow is a covered `auto' for liability coverage while being used by any individual named in the schedule or by his or her spouse while a resident of the same household except:
 {¶ 40} "a. Any `auto' owned by that individual or by any member of his or her household.
 {¶ 41} "b. Any `auto' used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking `autos.'
 {¶ 42} "2. The following is added who is an insured:
 {¶ 43} "Any individual named in the schedule and his or her spouse, while a resident of the same household, are `insureds' while using any covered `auto' described in paragraph b.1 of this Endorsement.
 {¶ 44} "c. Changes in Auto Medical Payments and Uninsured and Underinsured Motorist Coverages
 {¶ 45} "The following is added to Who Is An Insured:
 {¶ 46} "Any individual named in the schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by any `auto' you do not own except:
 {¶ 47} "Any `auto' owned by that individual or by any `family member'."
 {¶ 48} The schedule listed the name of the individual as, "All individuals assigned or leasing a company car where no other vehicle is owned by such individuals." Neither Eddie nor Lisa fall into the category of individuals listed on the schedule as neither were assigned or leased a company car and owned no other vehicle. Therefore, Eddie is not covered by the policy as a family member of an insured pursuant to this endorsement. Additionally, we stated above that "you" in the definition of who is an insured under the policy is not ambiguous but is Kmart. Thus, this case is unlike Scott-Pontzer, where "you" was ambiguous and interpreted to mean employees. Eddie is not covered under the USFG policy as a result of his wife, Lisa's, status as an employee. The trial court properly granted summary judgment to USFG against Eddie Crenshaw's estate.
The claims based on the Travelers Insurance policy
 {¶ 49} Mapson has also brought a claim on behalf of Eddie's estate against Travelers, which had an insurance contract with Sally Beauty Company, Eddie's employer. Boney and her family members have likewise brought a claim against Travelers stemming from Travelers' contract with Sally Beauty Company, which was also Boney's employer. Both Mapson and Boney are arguing the trial court erred in granting summary judgment to Travelers on their claims. We disagree.
a. The Business Automobile Policy
1. Eddie's estate and Boney's claims
 {¶ 50} Initially, Travelers argues that the trial court should have granted summary judgment to Travelers based on a finding that Illinois rather than Ohio law applies to the underlying contract in this case. Illinois does not follow the reasoning of the Ohio Supreme Court inScott-Pontzer and thus, the Plaintiffs' UM/UIM claims would not survive.
 {¶ 51} The Ohio Supreme Court in Ohayon v. Safeco InsuranceCompany of Illinois, 91 Ohio St.3d 474, 2001-Ohio-100, addressed the choice of law issue, stating:
 {¶ 52} "To resolve the choice-of-law issue, the Gries [SportsEnt., Inc. v. Modell (1984), 15 Ohio St.3d 284] court examined the factors in Section 188 of the Restatement. Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.' Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."
 {¶ 53} Further, the Court noted that in weighing these elements the analysis will "often correspond with the Restatement's view that the rights created by an insurance contract should be determined `by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" Id. quoting Restatement at 610, Section 193 (holding that Ohio Law applied where the insurance contract was executed and delivered in Ohio by Ohio residents and an Ohio licensed insurance agent, and the policy insured vehicles principally garaged in Ohio despite the fact that the accident occurred in another state).
 {¶ 54} A review of the Ohio cases that have addressed this issue have primarily focused on whether the insurance policy covers vehicles that are principally garaged in Ohio, finding Ohio law will apply if such vehicles are covered by the policy. Vohsing v. Federal Ins. Co., Licking App. No. 2002 CA 00101, 2003-Ohio-2511; Glover v. Smith, Hamilton App. No. C-020192 and C-020205, 2003-Ohio-1020; Moore v. Kemper Ins. Co.,
Delaware App. No. 02CAE04018, 2002-Ohio-5930; Edmondson v. PremierIndus. Corp., Cuyahoga App. No. 81132, 2002-Ohio-5573, Amore v. Grange,
Richland App. No. 02CA70, 2003-Ohio-3207; Garcia v. Green, Lucas App. L-02-1351, 2003-Ohio-3841. However, when the policy was contracted and negotiated in another state and no vehicles were contemplated to be principally garaged in Ohio, courts have refused to apply Ohio law.Varecka v. Doe, Warren App. No. CA2002-06-053, 2003-Ohio-817; Hofle v.General Motors Corp., Warren App. No. CA2002-06-062, 2002-Ohio-7152;Misseldine v. Progressive Cas. Ins. Co., Cuyahoga App. No. 81770, 2003-Ohio-1359.
 {¶ 55} Although in Register v. Nationwide Mut. Fire Ins. Cos., Hamilton App. Nos. C-020318 and C-020319, 2003-Ohio-1544, the First District Court of Appeals held that Ohio law did not apply where the accident occurred in Florida, the negotiations occurred in Illinois, the principal place of business was Illinois, the contract covered risks in Ohio, and the insurance policy contained an Ohio UM/UIM form, the same district found in McRoberts v. Kemper Risk Management, Hamilton App. No. C-030115, 2003-Ohio-5517 that Ohio law applied where the policy covered some vehicles principally garaged in Ohio, including the vehicle in the underlying accident, and the accident occurred in Ohio. One court has determined that the absence of an Ohio UM/UIM form indicates the parties' intent that Ohio law not apply. Reidling v. Meachum, 148 Ohio App.3d 86,2002-Ohio-528.
 {¶ 56} Having reviewed the cases addressing this issue, we now turn to the facts of the case before us. The underlying Travelers policy was contracted for, negotiated and delivered in Illinois. The underlying policy additionally covers some vehicles that are principally garaged in Ohio. Further, although Sally's Beauty Company is incorporated in Delaware and headquartered in Texas, it does have operating locations in Ohio. Moreover, the underlying accident occurred in Ohio. Based on our review of the above cases, a strong preference for applying Ohio law appears where vehicles intended to be covered by the contract are principally garaged in Ohio. In this case, the Travelers policy did cover vehicles principally garaged in Ohio. Therefore, we disagree with Travelers and find that Ohio law rather than Illinois law should apply.
 {¶ 57} Ohio R.C. 3937.18 as in effect on September 21, 2000, provided that insurance companies issuing automobile liability or motor vehicle liability policies of insurance had to offer the insureds uninsured and underinsured motorist coverage. R.C. 3937.18 (L) defined automobile liability or motor vehicle liability policies of insurance as either of the following:
 {¶ 58} "(1) Any policy of insurance that serves as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 59} "(2) Any umbrella policy of insurance written as excess over one or more policies described in division (L)(1) of this section." (Emphasis added.)
 {¶ 60} In Jump v. Nationwide Mutual Insurance Company, Montgomery App. No. 18880, 2001-Ohio-1699, this Court held that in order to qualify as an automobile liability or motor vehicle liability policy of insurance the insurance policy must specifically identify the motor vehicles that are covered under the policy. In Jump, we found that an insurance policy that had insurance for "hired" and "non-owned" vehicles did not qualify as an automobile liability or motor vehicle liability policy of insurance because the policy did not specifically identify the vehicles. More recently, in Lane v. State Auto Insurance Companies, Miami App. No. 2002-CA-10, 2002-Ohio-5128, we reiterated our position that vehicles must be specifically identified in the insurance policy in order for the insurance policy to amount to an automobile liability or motor vehicle liability policy under R.C. 3937.18(L). In Lane, we found that the policy language that "an auto * * * or mobile equipment owned by, operated by, rented to, or loaned to any insured," did not specifically identify the vehicles under the policy and did not amount to an automobile liability or motor vehicle liability policy. See also, Aguda De Uzhca, supra; Smithv. Nationwide Property Cas. Ins. Co., Montgomery App. No. 19857, 2003-Ohio-5530.
 {¶ 61} In the underlying business auto policy in this case issued by Travelers to Sally Beauty Supply, the declarations page of the policy states that the covered vehicles are "any auto." Travelers argues that this does not specifically identify a vehicle and thus the policy is not an automobile liability or motor vehicle liability policy. However, Travelers' commercial auto policy contains an endorsement titled "Hired Autos Specified as Covered Autos You Own". In this endorsement, the covered auto is listed as that described in the Schedule that states, "per schedules on file with company." We believe this specifically identifies vehicles that have liability coverage pursuant to this policy. Since the business auto policy would serve as proof of financial responsibility for those vehicles on the schedule on file with the company described in the endorsement, Travelers Business Auto policy is an automobile liability or motor vehicle liability policy of insurance to which R.C. 3937.18 applies.
 {¶ 62} Additionally, Travelers argues that the trial court properly granted it summary judgment on the business auto policy because Boney and Eddie were not insureds under the policy. The Travelers policy is remarkably similar to the USFG policy discussed above. As in USFG, the Travelers policy was liability policy that defined an insured as, "You for any covered `auto'. * * *." Additionally, the Travelers policy, like the USFG policy contained an endorsement modifying the business auto coverage policy titled "EMPLOYEES AS INSUREDS". This endorsement stated, "The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision. Any employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
 {¶ 63} We find that `you' in the Travelers policy like that in the USFG policy that we discussed above is unambiguous in meaning the Sally Beauty Company because the policy was a liability policy rather than a policy with UM/UIM coverage as in Scott-Pontzer, supra. Therefore, since "you" is not ambiguous, Eddie, Boney, and Boney's family members are not included in the term "you" in the policy and are not insured under the definition of an insured as "`you' for any covered auto".
 {¶ 64} Additionally as in the USFG policy, we find that Eddie and Boney are not covered under the ambiguous "EMPLOYEES AS INSUREDS" endorsement. As we stated above in addressing a similar endorsement in the USFG policy, we must agree with USFG and Travelers that this endorsement only extends coverage to employees while performing business or personal affairs on behalf of the corporation. As we noted above, this poorly drafted endorsement can be interpreted to mean that so long as the employee is using a covered auto that the corporation has not bought, hired or borrowed for its business or personal affairs the employee is an insured under the policy. However, this interpretation of the endorsement is detrimental to the policyholder, in this case Sally Beauty Company. Since ambiguity in an insurance contract must be interpreted in favor of the policyholder, Westfield, supra, we must read the endorsement to only cover vehicles that are being used for Sally Beauty's business or personal affairs. As Eddie and Boney have not alleged that they were using the vehicle for Sally Beauty Company's business or personal affairs, they are not insureds under the insurance policy. The trial court did not err in determining that Eddie and Boney were not insureds under the Travelers policy.
 {¶ 65} Also, Travelers argues that even under this endorsement Eddie and Boney are not insured because they were not in a "covered auto". As stated above, when underinsured coverage arises by operation of law, the court must look to the definition of who is an insured in the liability section of the policy to determine who is an insured for coverage imposed by operation of law. Luckenbill, supra; Demetry, supra. Under the liability provisions of the Travelers policy, the "covered auto" is listed as "any auto." The vehicle Eddie was driving in which both he and Boney were injured qualifies as "any auto." Thus, Eddie and Boney would be covered under the liability section of the policy.
 {¶ 66} Travelers argues that "covered auto" should be interpreted as the vehicles that are covered autos for UM/UIM coverage on the declarations page. The Travelers policy did not provide UM/UIM coverage for vehicles in Ohio. Rather the policy only had UM/UIM endorsements for those states where UM/UIM coverage was required and could not be rejected. The declarations page listed "covered autos" for UM/UIM coverage as "owned autos subject to a compulsory uninsured motorist law." We do not agree with Travelers on this issue. Since no UM/UIM coverage is available in Ohio under the policy, we believe the proper place to look for the definition of `covered auto' for a liability provision of the policy is the definition of a "covered auto" for liability coverage, not the definition for a "covered auto" for UM/UIM coverage that does not even apply in Ohio. Thus, we determine that a "covered auto" under the Travelers policy for liability coverage is "any auto"; as such Eddie's vehicle would qualify as a "covered auto."
 {¶ 67} Finally, Travelers argues that even if Eddie and Boney were insureds, UM/UIM coverage would not arise by operation of law because Sally Beauty Company did validly reject UM/UIM coverage for Ohio. The Ohio Supreme Court has stated that in order to know that a party has made an express, knowing rejection of UM/UIM coverage, there must be evidence of a written offer and a written rejection. Linko, supra at 448. TheLinko Court stated that in order meet the requirement of an offer under R.C. 3937.18, "the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" Id. at 447-448. As we said above when addressing this argument by USFG, we have recently issued a decision on this issue in Hollon, supra. In Hollon, we stated that the premium must be set forth in writing in the offer, expressly overruling this Court's previous decision in Manalo, supra. In Hollon, we held that the requirement of the offer containing the premium in writing cannot be avoided by providing extrinsic evidence that the corporation knew that the premium would increase if it selected to carry UM/UIM coverage. Id. A representative of Sally Beauty Company completed a "Supplementary Commercial Automobile Application" in which the representative rejected UM/UIM Coverage. However, this application did not provide the premium for the UM/UIM coverage. Without the premium being contained in the written offer, the application does not comply with the Linko
requirements for a valid offer and rejection. Pursuant to Hollon, the affidavit of a Sally Beauty representative cannot be used to satisfy thisLinko requirement. Therefore, a valid offer and rejection of UM/UIM coverage does not exist for the Travelers policy.
 {¶ 68} However, as stated earlier, Eddie and Boney were not insureds under the Travelers policy. Thus, under R.C. 3937.18, Travelers was not required to offer UM/UIM coverage and UM/UIM coverage will not be imposed as a matter of law. Thus, the trial court did not err in granting Travelers' motion for summary judgment against Eddie's estate and Boney.
2. Boney's family members
 {¶ 69} Travelers argues that Boney's family members are not insureds under the Travelers policy. Boney's family members argue based on Ezawa, supra, that they are covered under the Travelers' policy. As we stated above, "you" in the Travelers policy is not ambiguous but is interpreted throughout the policy consistently as Sally Beauty Company. Since there is no ambiguity, this Court will not judicially define "you" to mean Sally Beauty Company's employees and their family members. Further, there is no provision in the Travelers policy that extends coverage to family members of the company's employees or that extends the definition of an insured to include family members. Finally, as we stated above in Eddie's claim against USFG, we do not read Ezawa as holding that family members of employees are always insured for the purposes of UM/UIM coverage. Moreover, Ezawa has been reversed and is no longer good law. Westfield, supra. Therefore, we do not find error in the trial court's grant of summary judgment to Travelers for the claims of Boney's family members.
b. The Commercial General Liability Policy
 {¶ 70} As for Travelers' commercial general liability policy, Travelers also argues that this is not an automobile liability or motor vehicle liability policy of insurance. In DeUzhca, supra, and Lane,
supra, this Court held that limited exceptions such as the parking exception and the mobile equipment exception do not transform a commercial general liability policy into a motor vehicle policy of insurance. Similarly, Boney and Mapson argue that the parking exception and mobile equipment exception convert Travelers commercial general liability policy into an automobile liability or motor vehicle liability policy of insurance. We disagree. These exceptions do not change the fact that the commercial general liability policy did not provide proof of financial responsibility for any specifically identified vehicle. The trial court did not err in granting Travelers' motion for summary judgment as it applied to the commercial general liability policy.
 {¶ 71} The appellants' assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.
Wolff, J. and Grady, J., concur.
[1] For purposes of clarity, Mr. Crenshaw and his wife will hereinafter be referred to by their first names, Eddie and Lisa.
[2] Lisa's estate has subsequently dropped its claim against Travelers.
[3] Elizabeth Crenshaw was subsequently replaced as executor of Eddie's estate by Trina Mapson.