[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] Only defendant American Home Assurance Company, is involved in this appeal.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court summary judgment in favor of American Home Assurance Company, defendant below and appellee herein. The trial court determined that Bryan P. and Lisa Bentley, plaintiffs below and appellants herein, are not entitled to uninsured/underinsured motorist (UM/UIM) coverage under appellee's business auto policy that it issued to Bryan's employer, Wal-Mart Stores, Inc. (Wal-Mart). Appellants raise the following assignment of error for review:
 {¶ 2} "The trial court erred to the prejudice of plaintiff-appellants, bryan and lisa bentley, in granting summary judgment in favor of defendant-appellee, american home assurance company, and denying plaintiff-appellants' motion for summary judgment on their claims for declaratory relief on american home assurance business auto policy number RM CA 320-96-52."
 {¶ 3} Appellee raises the following cross-assignments of error:
 {¶ 4} First cross-assignment of error:
 {¶ 5} "The trial court erred in not finding that wal-mart rejected um/uim coverage."
 {¶ 6} Second cross-assignment of error:
 {¶ 7} "The trial court erred in failing to find that bentley was not an insured under the american home policy."
 {¶ 8} Third cross-assignment of error:
 {¶ 9} "The trial court erred in failing to find that there was no coverage under the american home policy as bentley was not occupying a covered auto."
 {¶ 10} Fourth cross-assignment of error:
 {¶ 11} "The trial court erred in failing to find that the gl fronting policy was not an automobile policy and not subject to ohio revised code section 3937.18."
 {¶ 12} The parties do not dispute the underlying facts. On June 15, 1999, a three-car accident occurred when Carmen Pendleton failed to yield to on-coming traffic, crashing into Fred Bice's vehicle, which then crashed into Bryan's vehicle. At the time of the accident, Bryan was acting in the course and scope of his employment with Wal-Mart.
 {¶ 13} Appellee and Wal-Mart entered into an "Indemnity Agreement," which provides: "Client will indemnify the Company against and Reimburse it in full for each Reimbursable Loss." Additionally, Wal-Mart executed a form rejecting Ohio UM/UIM coverage.
 {¶ 14} Appellants subsequently filed a complaint against appellee and requested the trial court to declare that they are entitled to UM/UIM coverage under appellee's policy that it issued to Wal-Mart.
 {¶ 15} The parties then filed cross-summary judgment motions regarding appellants' right to UM/UIM coverage under appellee's policy. Appellants asserted that: (1) they fell within the definition of an "insured" under appellee's policy; (2) appellee failed to properly offer UM/UIM coverage to Wal-Mart, resulting in such coverage being implied as a matter of law in an amount equal to the liability limit.
 {¶ 16} Conversely, appellee argued that appellants are not entitled to UM/UIM coverage. Appellee contended that Wal-Mart is self-insured in the practical sense and thus exempt from the R.C.3937.18 mandatory offering of UM/UIM coverage. Appellee argued that because Wal-Mart is self-insured in a practical sense and not subject to R.C. 3937.18, any purported failure to offer UM/UIM coverage in accordance with Linko v. Indemnity Ins. Co.of N. Am. (2000), 90 Ohio St.3d 445, 739 N.E.2d 338,[2]
could not result in UM/UIM coverage arising by operation of law.
 {¶ 17} Appellants disputed appellee's claim that Wal-Mart is self-insured in a practical sense by arguing that the "MCS-90 endorsement" shows that appellee, not Wal-Mart, retains the ultimate risk of loss. The MCS-90 endorsement states:
 {¶ 18} "The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
 {¶ 19} In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from the negligence in the operations, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitations contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
 {¶ 20} It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.
 {¶ 21} The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident."
 {¶ 22} Appellants read the MCS-90 endorsement to mean that appellee bears the ultimate risk of loss under the policy.
 {¶ 23} On December 2, 2003, the trial court granted summary judgment in appellee's favor and denied appellants' motion. The court determined that: (1) Wal-Mart is self-insured; (2) appellee possessed no duty to comply with former R.C. 3937.18 regarding the mandatory offering of UM/UIM coverage; and (3) as such, UM/UIM coverage could not be implied as a matter of law. Appellants filed a timely notice of appeal.
 {¶ 24} In their sole assignment of error, appellants assert that the trial court erred by granting appellee summary judgment and by denying their summary judgment motion. Appellants argue that the court incorrectly determined that Wal-Mart was self-insured and thus not subject to R.C. 3937.18. Appellants recognize that appellee and Wal-Mart "entered into a `Reimbursement Agreement,' which provides that Wal-Mart Stores, Inc., shall bear the ultimate risk for claims against the American Home Assurance business auto policy in question." They assert, however, that the presence of the "Reimbursement Agreement" does not mandate a finding that Wal-Mart is self-insured because the policy includes an "ICC endorsement MCS-90." Appellants maintain that the MCS-90 endorsement states that appellee, not Wal-Mart, bears the ultimate risk of loss under the policy. Appellants also assert that Wal-Mart is not self-insured because it does not hold a financial responsibility bond or an R.C. 4509.45(D) self-insurance certificate.
 {¶ 25} Essentially, the question we must resolve is whether the MCS-90 endorsement negates Wal-Mart's self-insured status. If Wal-Mart is self-insured, then appellee possessed no obligation to offer UM/UIM coverage in accordance with R.C. 3937.18 andLinko and thus, such coverage cannot arise by operation of law. Appellants basically concede that but for the MCS-90 endorsement, Wal-Wart is self-insured. See Appellants' Merit Brief at 2 ("Collateral to the business auto policy, Defendant-Appellee and Wal-Mart Stores, Inc., entered into a `Reimbursement Agreement,' which provides that Wal-Mart Stores, Inc., shall bear the ultimate risk for claims against [appellee's policy]."). Throughout their brief, appellants focus on the MCS-90 endorsement and argue that it negates any claim that Wal-Mart is self-insured. We, however, do not believe that the MCS-90 endorsement alters Wal-Mart's self-insured status. Therefore, we believe that appellee did not have a duty to comply with the mandatory offering of UM/UIM coverage under former R.C. 3937.18
and Linko. Consequently, UM/UIM coverage cannot arise by operation of law. Thus, appellants' claim that appellee's offer of UM/UIM coverage failed to comply with R.C. 3937.18 and Linko
and that such coverage therefore arises by operation of law lacks merit.
 {¶ 26} We initially note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer
(2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd.of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 27} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 28} * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.
 {¶ 29} A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 30} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 31} We have previously held that R.C. 3937.18 does not apply to self-insurers, either in the practical sense or in the legal sense, and we will not belabor the point. See Rucker v.Davis, Ross App. No. 02CA2673, 2003-Ohio-3191; Musser v.Musser, Adams App. No. 02CA750, 2003-Ohio-1440; Adams v. Fink,
Ross App. No. 02CA2660, 2003-Ohio-1457; see, also, Grange Mut.Cas. Co. v. Refiners Transp. Terminal Corp. (1986),21 Ohio St.3d 47, 487 N.E.2d 310, syllabus; Pitsenbarger v. Foos, Miami App. Nos. 03CA22, 03CA26, and 03CA27, 2003-Ohio-6534; Burchettv. Frey, Shelby App. No. 17-03-15, 2003-Ohio-6388. We therefore disagree with appellants that Wal-Mart's failure to comply with R.C. 4509.45(D) or its failure to acquire a financial responsibility bond means that Wal-Mart is not self-insured. The question thus becomes whether the MCS-90 alters self-insured status.
 {¶ 32} No Ohio court, to our knowledge, has decided the precise issue presented in the case at bar, i.e., whether an MCS-90 endorsement alters self-insured status. One thing that we can state with certainty is that a court considering "the applicability of an MCS-90 endorsement * * * construe[s] its operation and effect as a matter of federal law." Lynch v. Rob,95 Ohio St.3d 441, 2002-Ohio-2485, 768 N.E.2d 1158, at ¶ 14.
 {¶ 33} "Under the Motor Carrier Act of 1980, certain commercial motor carriers engaged in interstate commerce must register with the United States Secretary of Transportation and must comply with minimum financial responsibility requirements established by the Secretary of Transportation. The regulations require a specific endorsement form to be included in every insurance policy to satisfy the registration of the financial responsibility requirements. This form is the MCS-90 endorsement. The MCS-90 endorsement requires the insurer to indemnify the insured for any damages, subject to the underlying insurance."
 {¶ 34} Jeter v. Ramos, Richland App. No. 03CA14, 2003-Ohio-5242; see, also, Prestige Cas. Co. v. Mich. MutualIns. Co., 99 F.3d 1340, 1343 (6th Cir. 1996) (quoting 49 C.F.R. § 1043.1(a)(1995)) ("Federal regulations require "authorized carriers" to "maintain insurance or other form of surety `conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles' under the carriers license.").
 {¶ 35} In Lynch, the court discussed an MCS-90 endorsement when considering "the scope of insurance coverage relating to a traffic accident, in which two automobile occupants died, that was caused by the admitted negligence of the operator of a tractor-trailer rig." Id. at ¶ 1. The court specifically considered "whether coverage is available on the trailer under [the] MCS-90 endorsement, even though the operator of the rig was not an insured under the terms of the trailer's main policy, and even though there is no claim that the trailer owner was negligent." Id.
 {¶ 36} In deciding the issue, the court first recognized that "`the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers.'" Lynch, at ¶ 18 (quoting JohnDeere Ins. Co. v. Nueva (C.A. 9, 2000), 229 F.3d 853, 857). Next, the court stated that "[t]he MCS-90 endorsement explicitly overrides any `condition, provision, stipulation, or limitation' in the policy that would relieve the insurer from its duty to pay, to the limits of the endorsement, a judgment against the insured for negligent operation." Lynch, at ¶ 19. "`[A]n MCS-90 endorsement requires an insurer to indemnify a permissive user of a non-covered' vehicle." Lynch, at ¶ 20 (quoting John Deere,229 F.3d at 858). "The MCS-90 endorsement should be read to eliminate any limiting clauses in the underlying policy restricting the scope of coverage." Lynch at ¶ 20.
 {¶ 37} We do not believe Lynch resolves the question presented in this appeal. Lynch interpreted an MCS-90 endorsement in the context of determining the scope of coverage. The case states nothing about whether an MCS-90 endorsement affects self-insured status.
 {¶ 38} In White v. Insurance Co. of State of Pennsylvania
(N.D.Ohio, 2003), 282 F. Supp.2d 618, the plaintiffs argued that the MCS-90 endorsement turned the insurance policy into a "motor vehicle liability policy" subject to the UM/UIM requirements. The insurer countered that the MCS-90 endorsement did not convert the indemnity policy into a motor vehicle liability policy that must comply with R.C. 3937.18. The district court concluded that R.C. "3937.18 does not apply to indemnity policies, even if those policies happen to mention motor vehicles." White,282 F. Supp.2d at 626. The court found "no support" for the plaintiffs' assertion that the MCS-90 endorsement converts the excess indemnity policy into a motor vehicle liability policy which then has UM/UIM coverage imposed by operation of law. The court explained:
 {¶ 39} "In the first place, although under the endorsement [the insurer] is initially required to pay, [the insured] would be required to reimburse any payment that would not have otherwise been required under the policy. This fact makes even stronger the Court's view that the Program is a single self-insurance policy.
 {¶ 40} Finally, if this Court were to find that, because of the MCS-90 endorsement, the indemnity policy is really a motor vehicle liability policy, so that UM/UIM coverage is impressed upon it by operation of law, [the plaintiff, White], an employee of [the insured], would arguably be able to recover from [the insured] (who under the terms of the MCS-90 would be obligated to reimburse [the insurer]) what he could not otherwise recover due to worker's compensation immunities. This turns insurance contract law on its head.
 {¶ 41} While White did not consider the exact question involved in the case sub judice, we find the rationale sufficiently similar. The MCS-90 endorsement in appellee's policy does initially require appellee to pay, but Wal-Mart, pursuant to agreement, must reimburse appellee. Nothing in the MCS-90 endorsement shifts the ultimate, as opposed to the initial, risk of loss to appellee. See Musser, supra. Therefore, the MCS-90 endorsement does not alter Wal-Mart's self-insured status.
 {¶ 42} Furthermore, the primary purpose of an MCS-90 (i.e. protection of the public from injury by negligent authorized interstate carriers) is not implicated in the case at bar. A negligent authorized carrier did not cause appellants' injuries. Rather, a negligent third-party driver caused the injuries.
 {¶ 43} Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error. Appellee's cross-assignments are moot and we will not address them. See App.R. 12(A)(1)(c). Therefore, we affirm the trial court's judgment.
Judgment affirmed.
[2] In Linko, the Ohio Supreme Court, in interpreting R.C.3937.18(C) as enacted by S.B. 20, determined what constitutes a valid rejection/reduction of UM/UIM coverage. The court determined that an insured's rejection/reduction must be expressly and knowingly made in order to be valid. For an insured to expressly and knowingly reject/reduce UM/UIM coverage, the insurer must first present the insured with an offer of UM/UIM coverage that complies with former R.C. 3937.18(C). Id. at 448. The court explained that written offers of UM/UIM coverage must contain "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Id. at 449. Additionally, the court stated that the name of the entity must appear on the selection form. Id. at 450. The court determined that without an intelligent offer of UM/UIM coverage, an insured cannot expressly and knowingly reject/reduce UM/UIM coverage. Id. at 449; see, also, Kemperv. Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162,2002-Ohio-7101, 781 N.E.2d 196, at ¶ 4.