DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of a summary judgment issued by the Lucas County Court of Common Pleas to an insurer in a declaratory judgment action. Because we conclude that a question of material fact exists as to whether the injured party was in the scope of her employment, we reverse.
 {¶ 2} In 1999, appellant, Regina Houston,[1] was employed part-time by American Greetings Corporation as a "merchandiser." As such, she was required, at the direction of her employer, to visit American Greetings client stores and tend to merchandise displays in those stores. Initially, Regina Houston serviced several stores, assisting other more experienced employees. In June 1999, Houston was assigned her own two stores: a Rite-Aid and a Big Lots in Wauseon, Ohio. Nevertheless, Houston continued to assist at other stores, including a Rite-Aid in Swanton, Ohio and a Wal-Mart in Wauseon.
 {¶ 3} According to findings in a related workers' compensation appeal, on December 17, 1999, Houston serviced her two stores in Wauseon, stopped for lunch, then visited the Wauseon Wal-Mart where she picked up some film for herself and briefly assisted a co-employee there. Shortly after leaving the Wal-Mart, on her route home, Houston was seriously injured in an auto accident caused by an underinsured driver.
 {¶ 4} Houston initiated a worker's compensation claim with the Ohio Bureau of Workers' Compensation and claimed underinsured motorist's coverage under a business auto insurance policy issued to her employer by appellee, Liberty Mutual Fire Insurance Company. When appellee denied her claim, appellant instituted the present action, seeking a declaration of coverage under appellee's policy.
 {¶ 5} The matter was initially submitted to the trial court on cross-motions for summary judgment. Appellant argued that uninsured/underinsured motorist ("UN/UIM") coverage arose from the policy as a matter of law by virtue of an ineffective rejection of coverage and that Regina Houston was covered as an employee acting in the scope of her employment or, alternatively, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, 664. When the trial court granted appellant's summary judgment motion, appellee moved for reconsideration, then appealed. This court, however, dismissed the appeal for want of a final appealable order due to unresolved issues with other parties. In the intervening time, the Supreme Court of Ohio issued Westfield Ins. v. Galatis, 100 Ohio St. 3d 216,2003-Ohio-5849, which severely limited the application ofScott-Pontzer.
 {¶ 6} Following dismissal of appellee's appeal, the trial court revisited appellee's reconsideration motion and eventually reversed itself. The court found that Regina Houston was not within the scope of her employment at the time of the accident and was, therefore, not entitled to coverage under appellee's policy. On this finding, the court issued summary judgment in favor of appellee.
 {¶ 7} From this judgment, appellant now brings this appeal, setting forth the following three assignments of error:
 {¶ 8} "Assignment Of Error No. 1 — The Trial Court Erred In Granting Defendant's-Appellee's Motion For Reconsideration Of The Trial Court's Order Granting Summary Judgment To Plaintiff-Appellant, Because Plaintiff, Regina Houston Was Driving Home From A Non-Fixed-Site Place Of Employment, And The Trial Court Below Ignored An Unchallenged Prior Order Of The Fulton County, Ohio Common Pleas Court, Which Overturned On Appeal A Ruling Of The Industrial Commission Of Ohio Upon Which The Trial Court Below Relied And Ruled That Whether Plaintiff Was In The Course And Scope Of Her Employment Was A Jury Question.
 {¶ 9} "Assignment Of Error No. 2 — The Trial Court Erred In Granting Defendant's [sic]-Appellee's Motion For Reconsideration Of The Trial Court's Order Granting Summary Judgment To Plaintiff-Appellant, Because Plaintiff, Regina Houston Was Driving Home From A Non-Fixed-Site Place Of Employment And Had Returned To Her Regular Route Home At The Time Of The Accident, After A Minor Deviation From Her Route, And Therefore Was In The Course And Scope Of Her Employment At The Time Of The Accident Under The Authority Of Amstutz V. Prudential Ins. Co. OfAmerican (1940), 136 Ohio St. 404.
 {¶ 10} "Assignment Of Error No. 3 — The Trial Court Erred In Granting Defendant's [sic]-Appellee's Motion For Reconsideration Of The Trial Court's Order Granting Summary Judgment To Plaintiff-Appellant, Because Plaintiff, Regina Houston Was Driving Home From A Non-Fixed-Site Place Of Employment And Had Returned To Her Regular Route Home At The Time Of The Accident, After A Minor Deviation From Her Route, And, Therefore Was Operating Her Vehicle In The Personal Affairs Of Her Employer At The Time Of The Accident."
 {¶ 11} Appellee has filed a cross-appeal, positing the following two assignments of error:
 {¶ 12} "I. The Collateral Estoppel Doctrine Bars Appellant/Cross-Appellee from Relitigating Whether She Was in the Course and Scope of Her Employment at the Time of Her Loss on December 17, 1999.
 {¶ 13} "II. American Greetings, Inc. Properly Rejected Ohio UM/UIM Coverage."
 {¶ 14} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 15} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 16} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 I. UM/UIM Coverage {¶ 17} We shall discuss appellee's second cross-assignment of error first.
 {¶ 18} At issue is a $2 million commercial auto liability policy issued by appellee to American Greetings, Inc. with an effective date of March 1, 1999. The policy contains no Ohio UM/UIM endorsement. The trial court, however, expressly in its first summary judgment decision and tacitly in its second summary judgment decision imposed UM/UIM coverage as a matter of law.
 {¶ 19} R.C. 3937.18 governs the issue of UM/UIM insurance in Ohio. The parties agree that the version of R.C. 3937.18
applicable to the policy at issue here is the statute as amended by 1997 Am.Sub.H.B 261 (eff. 9-3-97), 147 Ohio Laws, Part II, 2372.
 {¶ 20} Former R.C. 3937.18 (A) required that an insurer issuing or delivering a liability policy covering a motor vehicle registered or principally garaged in Ohio must offer, "* * * both [uninsured and underinsured motorist coverage] to persons insured under the policy for loss due to bodily injury or death suffer by such insureds * * *." The coverage offered must be in an amount equivalent to the amount of liability coverage. Former R.C.3937.18 (C). Such coverage may be rejected, but when no offer, or a defective offer, is made, there can be no effective rejection of such UM/UIM insurance and coverage arises as a matter of law.Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, ¶ 2 of the syllabus. For an offer of UM/UIM coverage to be effective under the statute, the insurer must inform the insured of the availability of coverage and the proposed premium. The offer must also provide a brief description of coverage and coverage limits.Linko v. Indemnity Ins. Co. (2000), 90 Ohio St.3d 445, 447-448.
 {¶ 21} Although the Linko requirements address an earlier version of R.C. 3937.18, they remain applicable after the H.B. 261 amendment. Kemper v. Michigan Millers Mut. Ins. Co.98 Ohio St.3d 162, 2002-Ohio-7101, ¶ 4. Nevertheless, H.B. 261 does modify how the Linko rules apply. Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, syllabus. After H.B. 261, R.C. 3937.18
(C) provides that when a named insured or applicant executes a "* * * written, signed rejection of both [UM/UIM] coverages as offered * * *" there arises a presumption of an offer of proper coverages. (Emphasis added.) Moreover, once a signed rejection is produced, the elements of the offer may be shown by extrinsic evidence. Hollon, supra.
 {¶ 22} In this matter, submitted to the trial court were documents captioned "Ohio Bodily Injury Uninsured Motorist Coverage" and "Important Uninsured/Underinsured Motorist Excess Option Form." The first document, executed by American Greeting's director of risk management on February 18, 1999, contains what appear to be per vehicle premium amounts for various vehicles and various risks in coverage amounts from $50, 000 to $1 million. Checked below are boxes next to the statements: "I reject Bodily Injury Uninsured Motorists Coverage" and "I reject Uninsured Motorists Property Damage Coverage."
 {¶ 23} The second document advises that "Uninsured/Underinsured Motorist Coverage may extend your Umbrella Excess Liability Policy" in an amount equal to the face value of the umbrella policy or such coverage may be rejected. Executed on November 11, 1999, by the same American Greeting representative, a box next to the statement "I wish to reject Uninsured/Underinsured Motorist Coverage."
 {¶ 24} Submitted with all these documents is an affidavit by the director of risk management who authenticated the documents and averred that they documented American Greeting "* * * intent to waived any Uninsured Motorist Coverage."
 {¶ 25} As the trial court properly concluded in its first summary judgment entry, the document related to the umbrella policy is irrelevant, because the umbrella policy is not an issue in this lawsuit. Appellant's complaint alleges coverage only under the $2 million auto liability policy, effective March 1, 1999.
 {¶ 26} As regards the waiver of UM/UIM coverage for the auto policy, again as the trial court noted, the rejection form contains no offer of coverage to the $2 million limits of the principal policy limits, nor does it state the premium for such coverage. Moreover, since the rejection form fails to even mention underinsured motorist coverage,[2] it could be rightly argued that the R.C. 3937.18 (C) presumption of regularity in the offer does not arise because the statute requires an antecedent "written, signed rejection of both
coverages." (Emphasis added.) Moreover, the affidavit of American Greeting's risk manager is unavailing to appellee because it too is silent of any intent of the company to reject underinsured motorist coverage. Consequently, the trial court properly ruled that UIM coverage arose as a matter of law. Appellee's second cross-assignment of error is not well-taken.
 II. Collateral Estoppel. {¶ 27} In its first cross-assignment of error, appellee argues that collateral estoppel from Regina Houston's Worker's Compensation Claim bars her claim here.
 {¶ 28} Appellee premises its assertion upon a "stipulated dismissal entry" in a Fulton County appeal from a denial of workers' compensation benefits.
 {¶ 29} This cross-assignment fails for two reasons. First, the issue of whether Regina Houston was acting within the scope of her employment for workers' compensation purposes is not coextensive with the interpretation of the language of an insurance policy.
 {¶ 30} Second, we do not find the entry appellee references in the record of this case. It only appears as an attachment to its brief. App.R. 9 circumscribes the material this court may consider on appeal. We find no authority in App.R. 9 to consider evidence that was not presented to the trial court.
 {¶ 31} Accordingly, appellee's first cross-assignment of error is not well-taken.
 III. Covered Employee. {¶ 32} In each of appellant's three assignments of error, they argue that the trial court erred in concluding that Regina Houston was not insured under appellee's policy because, as a matter of law, she was not within course and scope of her employment when the collision occurred. We shall discuss appellant's assignments of error together.
 {¶ 33} The declarations page of the insurance policy at issue lists Regina Houston's employer, American Greetings Corporation, as the named insured. Under "Covered Autos" the policy is coded for "any auto," with a $2 million per accident limit for liability coverage. The policy contains an endorsement titled "Employees as Insureds" which provides that the "who is insured" provisions of the liability coverage section is amended to include the provision "any `employee' of yours is an `insured' while using a covered `auto' you don't own, hire, or borrow in your business or personal affairs." "You" and "yours" in the policy refers to American Greetings Corporation.
 {¶ 34} It is unrefuted that Regina Houston was an American Greetings employee. Similarly, it is uncontested that she was driving an auto not owned, hired, or borrowed by American Greetings. Consequently, if Regina Houston was using that auto in the "business or personal affairs" of American Greetings, she is an insured under the policy and is entitled to UIM coverage which has been imposed by operation of law. See Moore v. Kemper Ins.Co., 5th Dist. No. CA-04-018, 2002-Ohio-5930, at ¶ 25, appeal not accepted 98 Ohio St.3d 1489, 2003-Ohio-1189.
 {¶ 35} Although the parties devote a substantial amount of their argument as to whether Regina Houston was within the course and scope of her employment as that phrase is used in workers' compensation, this is not a workers compensation case. This is a declaratory action, the purpose of which is to ascertain the rights and responsibilities of the parties under an insurance contract. As we shall discuss later, while workers' compensation case law may be persuasive in determining whether the claimant was within the scope of her employment, it is not dispositive.
 {¶ 36} The role of the court in interpreting a contract of insurance or any other kind of contract is to give effect to the intent of the parties. As we examine the contract as whole, we presume that the parties' intent is reflected in the language used. Westfield Ins. v. Galatis, 100 Ohio St.3d 216, 219,2003-Ohio-5849 at ¶ 11. When the policy language is clear, the court may look no further to find the intent of the parties. Id., citing Alexander v. Buckeye Pipeline Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 37} Where there is ambiguity, however, the role of the court is to provide a resolution. In doing so, we are guided by certain principles of construction. Language is to be given its plain and ordinary meaning unless another meaning is clearly apparent, Alexander, supra. When a contract is standardized and between parties of non-equal bargaining power, an ambiguity in the writing will be construed strictly against the drafter and in favor of the non-drafting party. Westfield, at ¶ 13, citingCentral Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 413. An insurance contract is normally drafted by the insurer. Consequently, in such a contract, ambiguities are ordinarily interpreted against the insurer and in favor of the insured. Id., citing King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus. Nevertheless, a plaintiff who is not a party to the contract is in no position to urge as a party that the contract be strictly construed against the other party. Id. At ¶ 14.
 {¶ 38} This latter caveat is not applicable in the present matter. The presence of the "employees as insured" endorsement in the policy at issue is indicative of a clear and unambiguous intent between the parties that American Greetings employees be insured under certain circumstances. At least, this puts American Greetings employees, including Regina Houston, in the position of a third party beneficiary or a contingent beneficiary to the policy. To hold that she did not have standing to urge a strict construction would be violative of the clear intent of the policy. See Westfield at ¶ 12; Shifrin v. Forest City Ent.,Inc. (1992), 64 Ohio St.3d 635, 638.
 {¶ 39} Ultimately at issue is the construction of the employees as insureds endorsement. Specifically, whether Regina Houston, as an American Greetings employee, was, "* * * using the covered `auto' you [American Greetings Corp.] don't own, hire, or borrow in your [American Greetings'] business or your [American Greetings'] personal affairs." This exact language was considered by the Second Appellate District and found to be ambiguous.Pitsenbarger v. Foos, 2nd. Dist. No. 2003CA22, 26, 27, 2003-Ohio-6534, at ¶ 27. Indeed, here the trial relied onPitsenbarger and concluded that because Pitsenbarger had been denied coverage on identical language the same result should apply here.
 {¶ 40} Pitsenbarger is distinguishable from the present matter because Pitsenbarger's decedent unarguably was not in a covered auto for her employer's "business or personal affairs." In this matter, Regina Houston averred that on the day of the accident she had driven her car to Wauseon on her employer's business and was returning home when the collision occurred.
 {¶ 41} This is the point at which the parties invoke worker's compensation law. The reason for such reliance is clear. For an employee to be eligible for workers' compensation benefits, his or her injury must have been received, "* * * in the course of, and arising out of, the injured employee's employment." R.C.4123.01 (C). The interpretation of this provision has resulted in a substantial body of law defining when an employee is or is not within the course and scope of the claimant's employment. An employee is in the scope of his or her employment when performing, "* * * some required duty done directly or indirectly in the service of the employer * * *." Indus. Comm. v. Ahern
(1928), 119 Ohio St. 41, paragraphs two and three of the syllabus. Adjunct to this is the "coming and going" rule, which posits that an employee injured while traveling to or from a fixed place of employment is not entitled to participate in the worker's compensation fund. Fletcher v. Norwest Mech. Contr.
(1991), 75 Ohio App.3d 466, 471. Alternatively, an employee whose place of employment is clearly not fixed may participate. Id. at 472. Those clearly without a fixed situs of employment would be traveling salesperson, see Indus. Comm. v. Heil (1931),123 Ohio St. 604, 606, a snow plow driver, Lord v. Daughtery
(1981), 66 Ohio St.2d 441, or an insurance adjuster. See Lohnesv. Young (1963), 175 Ohio St. 291, 293.
 {¶ 42} Less clear, but nonetheless held to be in the course of employment, is the well rigger who must travel to various customers' premises to drill, Ruckman v. Cubby Drilling Inc.
(1998), 81 Ohio St.3d 117, 121, a contractor directed by his employer to report to a customer's site, Fletcher, supra, at 474, or an employee of a maid service. Moore v. Phillips, 8th Dist. No. 84812, 2005 Ohio-1741, at ¶ 21.
 {¶ 43} Ordinarily, whether an employee is acting within the scope of his or her employment is a question of fact. Posin v.A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 278. It is only when reasonable minds can come to one conclusion that the issue becomes a question of law. This occurs only when the facts are undisputed and there are no conflicting inferences possible. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330, citing Mary M. v. Los Angeles (1991), 54 Cal.3d 202, 213.
 {¶ 44} In this matter, there was evidence presented that Regina Houston drove at the direction of her employer to the premises of her employer's customer. Although, at the time of the accident, she was assigned to two such customers' premises, she testified at her deposition that she had been on other occasions assigned to other stores, including the Wal-Mart at which she stopped on her way home. In her affidavit, Houston averred that earlier that day she had been at another store at the direction of her employer. By analogy to the worker's compensation "coming and going" it is a reasonable conclusion that Regina Houston was a non-fixed status employee whose travel to and from work was within the scope of her employment. It is similarly reasonable to conclude that this status satisfies the policy requirement that the employees be in the employer's "business or personal affairs" to be insured.
 {¶ 45} In its summary judgment entry, the trial court did not expressly conclude whether Regina Houston was a fixed or non-fixed status employee. Rather, the court observed that Houston was not paid for her commute and, in any event, when she stopped for lunch and at Wal-Mart, where she picked up film, she had deviated from the course of her employment and, therefore, was not in the scope of employment when the accident occurred.
 {¶ 46} Whether an employee is paid for driving time is not dispositive of whether the employee is in the course of his or her employment. Ruckman, supra at 121, at fn 1. Moreover, if Houston was driving to or from various places of employment at the direction of her employer, it is not unreasonable to conclude that she did so for the attainment of her employer's objectives and was, therefore, in a master-servant relationship under the doctrine of respondeat superior. Baird v. Sickler (1982),69 Ohio St.2d 652, 654.
 {¶ 47} Whether we say that Houston was on he employer's business or personal affairs by analogy to worker's compensation or respondeat superior, there is evidence that following her "frolic and detour" to lunch and to Wal-Mart, she was once again on her trip home when injured. Ordinarily, when a "frolic and detour" is ended and the employee returns to his or her original route, the employee is again within the scope of employment. Prosser Keeton, The Law of Torts (5th ed. 1984) 504; compareSkapura v. Cleveland Electric Illuminating Co. (1951),89 Ohio App. 403, 407, Sudman v. Wilson (Nov. 29, 1990), 8th Dist.App. No. 57586.
 {¶ 48} Given these reasonable inferences which may be drawn from the facts in favor of Regina Houston, we can only conclude that a question of material fact remains as to whether she was on her employer's business or personal affairs at the time of this accident. Accordingly, the trial court erred in granting summary judgment to appellee in this matter. Consequently, although we find each of appellant's assignments of error well-taken to the extent that they assert trial court error in granting summary judgment, we decline to endorse any of the specific reasons appellant advances, beyond that a question of fact exists as to whether Regina Houston was engaged in her employer's "business or personal affairs" at the time of the accident.
 {¶ 49} Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to said court for further consideration consistent with this decision. Appellee is ordered to pay the costs of this appeal for which sum judgment is rendered against appellee on behalf of Lucas County, and for which execution is awarded. See App.R. 24.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J., Concur.
[1] Regina Houston's husband, William Houston, is also an appellant by virtue of a loss of consortium.
[2] Appellee's argument that policy language defining underinsured coverage as uninsured coverage is unavailing. The policy was not part of the R.C. 3937.18(C) offer. Cf. McClure v.West American Ins. Co., 6th Dist. No. L-04-1265, 2005-Ohio-2747, interpreting the policy itself, not the rejection form.