[Cite as *Garlock v. Jordan*, 2025-Ohio-82.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Ashley Garlock, Individually and
as Mother and Natural Guardian of
A. G., a minor

        Appellant

v.

Christopher Jordan, et. al.

        Appellees

[Joy Smith and Janel Strong –
Appellants]

Court of Appeals No.   S-23-030
                            S-23-031

Trial Court No.  21 CV 946

**DECISION AND JUDGMENT**

Decided:  January 10, 2025

\* \* \* \* \*

George R. Oryshkewych, for appellant, Ashley Garlock.

James W. Hart and John M. Felter, for appellants, Joy Smith
and Janel Strong.

Daniel J. Hurley, for appellee, Wyandot Mutual Insurance
Company.

\* \* \* \* \*

**ZMUDA, J.**

{¶ 1} In this consolidated appeal, plaintiff-appellant, Ashley Garlock, and

defendants-appellants, Joy Smith and Janel Strong (collectively, appellants), appeal the

October 24, 2023 order of the Sandusky County Common Pleas Court declaring that

intervening plaintiff-appellee, Wyandot Mutual Insurance Company ("Wyandot"), had no duty to defend or indemnify any defendant regarding Garlock's claims. For the following reasons, we affirm.

## I. Background

{¶ 2} On December 13, 2021, Garlock, both individually and in her capacity as natural guardian of her minor daughter, A.G., filed a complaint in Sandusky County Common Pleas Court against Smith, Strong, Robert Downing, and Chistopher Jordan (collectively, defendants-appellants).[1] Garlock's complaint alleged that on July 31, 2021, A.G. was visiting the defendants-appellants' home when a dog that was owned, kept, or harbored by the defendants-appellants attacked A.G., biting her in the face, and asserted that defendants-appellants were strictly liable for the resulting damages.

{¶ 3} When the incident occurred, A.G. was at a cookout hosted by Strong and Jordan at their home. The home was owned by a trust for which Smith served as trustee and was covered by a home insurance policy through Wyandot. The home insurance policy contained a provision excluding from coverage the following:

> "Bodily injury" or "Property Damage" caused by full or partial breed Dobermans, German Shepherds, Pit Bulls, Chows, Akitas and Rottweilers or any other dog or dogs, regardless of breed, that have been involved in past human biting incident; or any dangerous or vicious dogs as defined in the Ohio Revised Code, section 955.11 and any revision of that section of law; owned by or in the care, custody or control of the "insured" or for which the "insured" is legally responsible.

---

[1] Downing died during this case's pendency, and Garlock subsequently dismissed her claims against him and amended the complaint to assert her claims against Smith in Smith's capacity as trustee of Downing's trust. Jordan has not filed a brief in this appeal. For simplicity, all defendants will be referred to collectively as defendants-appellants.

2.

{¶ 4} As an intervening plaintiff, Wyandot filed a complaint seeking declaratory judgment, requesting that the court declare that Wyandot had no duty to defend or indemnify Jordan because he was not an "insured" under the policy. In addition, Wyandot sought a declaration that it had no duty to defend or indemnify any other defendant because the dog that bit A.G. was at least part Rottweiler and the policy excluded bodily injury caused by full or partial breed Rottweilers.

{¶ 5} On October 28, 2022, Wyandot moved for summary judgment. Wyandot argued that the policy excluded all injuries caused by full or partial breed Rottweilers. Wyandot asserted that because the dog that caused A.G.'s injuries was at least a partial breed Rottweiler, the injuries at issue were excluded from coverage.

{¶ 6} Smith and Strong opposed Wyandot's motion. Garlock also filed an opposition to Wyandot's motion, which she combined with her own motion for summary judgment. Smith, Strong, and Garlock, in their respective filings, argued the court must interpret the policy to find coverage even if the dog was a partial breed Rottweiler. In support, Smith and Strong submitted the affidavit of an English language professor analyzing the grammar of the exclusion. In his affidavit, the professor opined that the absence of a semi-colon after the word Rottweiler in the relevant exclusion meant that only injuries caused by full or partial breed Rottweilers that had been involved in prior human biting incidents were excluded from coverage. Under this interpretation, A.G.'s injuries were covered because there was no evidence that the dog at issue, even if it were a full or partial breed Rottweiler, had been involved in a prior biting incident. Appellants

3.

further argued that even if Wyandot's proposed interpretation could be construed as reasonable, the interpretation of its expert witness was a second reasonable interpretation, and therefore the exclusion was ambiguous and must be construed against Wyandot in favor of coverage.

{¶ 7} On May 10, 2023, the parties stipulated that the dog at issue was a partial breed Rottweiler, and the trial court granted Wyandot's motion for summary judgment on May 25, 2023. The trial court's analysis of the issues is set forth below in its entirety:

> Wyandot argues that their policy excludes dog bites involving certain breed dogs, including Rottweilers or Rottweiler mixed dogs. The language in the policy is clear and uncontroverted. The parties have stipulated that [the dog at issue] is a Rottweiler mixed breed dog.

Following its analysis, the trial court's decision concluded that Wyandot's motion for summary judgment was granted. The court did not address Wyandot's request for declaratory judgment. The trial court's conclusion also did not address, nor did the trial court otherwise rule on, Garlock's motion for summary judgment.

{¶ 8} All parties sought clarification from the court regarding the effect of the court's order. On June 9, 2023, Garlock filed a motion for clarification regarding the May 25, 2023 order, pointing out that the court's opinion did not address the grammatical structure of the exclusion and did not rule on her motion for summary judgment. On June 12, 2023, Wyandot filed a request for the trial court to "expressly declare the parties' respective rights and obligations." And on June 20, 2023, Smith and Strong filed a request for modification of the court's May 25, 2023 order, arguing that the trial court had not addressed the English professor's expert opinion.

4.

{¶ 9} While the motions for clarification were still pending, Garlock filed a notice of appeal in this court concerning the May 25, 2023 order, and Smith and Strong filed a cross appeal. On August 23, 2023, we granted Wyandot's motion to dismiss the appeal due to a lack of a final, appealable order because the trial court had not yet entered an order declaring the rights and obligations of the parties under the insurance policy and did not include language pursuant to Civ.R. 54(B) that there is "no just reason for delay" in its May 25, 2023 decision.

{¶ 10} On October 24, 2023, the trial court issued a judgment entry in response to the pending motions. The trial court's judgment entry, which it issued "in accordance with the Court's May 25, 2023 decision," declared that "[Wyandot] is not obligated to defend or indemnify an[y] of the Defendants with respect to the injuries [Garlock] may have sustained as a result of the dog bite/attack incident." The court explained that an expert witness was unnecessary for the court to interpret the policy language. The court also declared that Jordan and Smith did not qualify as insureds under the policy. Finally, the court denied Garlock's motion for summary judgment. The trial court's order expressly stated, "[t]here is no just reason for delay."

{¶ 11} Garlock filed a timely appeal with a merit brief, and Smith and Strong filed a separate, timely appeal with their own merit brief. The appeals were consolidated, and appellants' assignments of error will be addressed together below.

5.

## II.  Assignments of Error

{¶ 12} Garlock asserts the following assignments of error for our consideration:

1.  The trial court erred, as a matter of law, by granting summary judgment in favor of Wyandot and by denying plaintiff/appellant's motion for summary judgment.

2.  The trial court erred, as a matter of law, in making a finding as to Joy Smith's status as an "insured."

{¶ 13} Next, Smith and Strong's single assignment of error is set forth below:

The trial court erred by granting Intervening Plaintiff/Appellee Wyandot Mutual Insurance Company's Motion for Summary Judgment.

## III.  Law and Analysis

{¶ 14} Smith and Strong's single assignment of error and Garlock's first assignment of error both require us to interpret the exclusion's language.  Appellants contend that the exclusion is ambiguous and thus must be construed in favor of coverage, and therefore the trial court erred in holding that Wyandot had no duty to defend or indemnify.  In support, they point to the exclusion's punctuation, arguing that if the parties had intended to make the listed dog breeds its own separate category regardless of their biting history, then the list of breeds should have been followed by a semi-colon.

{¶ 15} This court reviews the interpretation of an insurance policy as a matter of law.  *Buehrer v. Meyers*, 2020-Ohio-3207, ¶ 13 (6th Dist.). "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts.  Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally

6.

contemplated by the parties.'" *Id.* at ¶ 14, quoting *Rhoades v. Equitable Life Assur. Soc. of U.S.*, 54 Ohio St.2d 45, 47 (1979). "As we examine the contract as whole, we presume that the parties' intent is reflected in the language used. When the policy language is clear, the court may look no further to find the intent of the parties." *Id.,* quoting *Houston v. Liberty Mut. Fire Ins. Co.*, 2005-Ohio-4177, ¶ 36.

{¶ 16} On the other hand, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), paragraph one of the syllabus. However, to create ambiguity, the possible interpretations must be *reasonable. Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. Indeed, "[t]he mere potential for ambiguity in a clause in a contract is not sufficient to establish that the provision is susceptible of more than one reasonable interpretation." *Id*. at ¶ 29.

{¶ 17} "When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary." *Wohl v. Swinney*, 2008-Ohio-2334, ¶ 22. Accordingly, an interpretation that makes policy language unnecessary or superfluous cannot be reasonable and therefore does not create ambiguity. *Id.*

{¶ 18} Further, if a strict grammatical reading of the language results in unnecessary or superfluous terms, then such an interpretation is not reasonable. *Burgess v. Erie Ins. Group*, 2007-Ohio-934 (10th Dist.). For example, the Tenth District Court of

7.

Appeals examined an insurance policy that was missing a comma in a provision excluding coverage for "bodily injury to anyone we protect while operating occupying, or when struck by [motor vehicles not specifically identified in the policy]." *Id*. at ¶ 7. In that case, the insureds argued that the exclusion was ambiguous because of the lack of a comma in the phrase "operating occupying." *Id*. at ¶ 8. The court held that only one interpretation of the phrase was reasonable, making the exclusion was unambiguous:

> Because a person must be occupying a vehicle while operating it, the use of the term "occupying" in the phrase "operating occupying" is not necessary and would therefore be redundant. Thus, the only reasonable construction of the phrase is to read the terms as two separate actions, despite the lack of a comma between them.

*Id*. at ¶ 18. Accordingly, even a grammatical error, such as the omission of punctuation, does not render a policy provision ambiguous if only one reasonable interpretation of the provision exists.

{¶ 19} Here, like the insured in *Burgess*, appellants point to the lack of punctuation in the exclusion as creating ambiguity in the following portion of the exclusion:

> caused by full or partial breed Dobermans, German Shepherds, Pit Bulls, Chows, Akitas and Rottweilers or any other dog or dogs, regardless of breed, that have been involved in past human biting incident;[2]

They contend that to exclude the listed breeds without regard to their past biting history, the exclusion must contain a semi-colon after Rottweilers. By failing to include the semi-

---

[2] The policy contains another category of exclusion, dogs that qualify as dangerous or vicious dogs under R.C. 955.11, but this category is not at issue and is therefore not discussed.

8.

colon, appellants argue that grammatical rules dictate the phrase "that have been involved in a past biting incident" must apply to all of the preceding language, including the listed breeds, and not merely to the phrase "any other dog or dogs." They claim that at best, the language is ambiguous and therefore the policy must be interpreted in their favor. In contrast, Wyandot argues that the list of breeds—regardless of biting history—constitutes its own separate category, and to interpret the language otherwise would render the list of the named breeds unnecessary and therefore such an interpretation must be unreasonable.

{¶ 20} After examining the language in the exclusion, we agree that the lack of a semi-colon or any other punctuation between "Rottweilers" and "or any other dog or dogs" makes the language subject to two possible interpretations. In the first interpretation, the lack of punctuation separating the phrases means that they must be read together, so that the only excluded damages are those caused by dogs that have been involved in a past human biting incident. In the second interpretation, the punctuation must be "read in" to create two categories of exclusion: (1) damages caused by a dog that is at least partially one of the specific listed breeds; and (2) damages caused by a dog of any breed that was involved in a past human biting incident.

{¶ 21} However, the outcome in this case turns on the reasonableness of the proposed interpretations, not which interpretation is the most grammatically sound. Appellants' argument fails because they rely solely on the grammatical mechanics of the exclusion without regard for its meaning. Although a sentence's mechanics are one factor to consider in interpreting contractual language, a rote focus on mechanics, such as

9.

inclusion or omission of punctuation, cannot supersede the resulting effect on the language's meaning. *Burgess* at ¶ 18. Here, the first interpretation is not reasonable due to its effect on the list of specific breeds. If the parties' intent was to exclude all dogs with a history of biting without regard to breed and to have no breed-specific exclusion, then the list of specific breeds would be unnecessary. An interpretation that results in unnecessary language is unreasonable, even if the alternative, reasonable interpretation contains minor mechanical errors, such as omitted punctuation. *Id.*

{¶ 22} Just as the *Burgess* court reasoned that an individual cannot "operate" a vehicle without also "occupying" it, and therefore the two terms must constitute two separate categories of exclusion, a dog cannot be a Rottweiler without also being a dog of any breed. *Id.* Because only the second interpretation—creating two categories of exclusion, one for the specific listed breeds and one for dogs of any breed with a history of a human biting incident—does not render any language unnecessary or meaningless, there is only one reasonable interpretation. And because only one reasonable interpretation of the policy exists, the policy is unambiguous. *Lager*, 2008-Ohio-4838, at ¶ 16, 29.

{¶ 23} Therefore, we find that the trial court correctly determined that the policy exclusion was unambiguous and the only reasonable interpretation excludes coverage for injuries caused by partial breed Rottweilers, regardless of the dog's biting history. Because the parties have stipulated that A.G.'s injuries were caused by a partial breed Rottweiler, the trial court correctly issued declaratory judgment holding that Wyandot

10.

had no duty to defend or indemnify any party for the claims asserted in this case. Garlock's first assignment of error and Strong and Short's single assignment of error are found not well-taken.

{¶ 24} Further, because Wyandot has no duty to defend or indemnify any of the claims asserted in this action, Garlock's second assignment of error is moot, and we need not consider whether Strong is an insured under the policy. App.R. 12(A)(1)(c).

## IV. Conclusion

{¶ 25} For the foregoing reasons, the October 24, 2023 order of the Sandusky County Common Pleas Court is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.          _____
                                              JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, J.             _____
CONCUR.                                       JUDGE

                                _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.